MORGAN B. BRAINARD ET AL. *v.* TOWN OF
WEST HARTFORD

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, JS.

Argued December 3, 1953—decided February 9, 1954

*Albert S. Bill,* with whom, on the brief, was *Harrison D. Schofield,* for the appellant (defendant).

*Bruce W. Manternach,* with whom, on the brief, was *Lee C. Fielden,* for the appellees (plaintiffs).

QUINLAN, J. The plaintiffs brought this action asking an injunction to restrain the defendant from establishing a dump on premises acquired by it. From a judgment rendered for the plaintiffs the defendant has appealed.

The court found the following unchallenged facts: The defendant burns its rubbish, including some garbage, in an open dump in the town's only industrial zone. The dump produces smoke and disagreeable odors; it causes fires and necessitated, from 1948 to 1952, between twenty-eight and thirty-five fire department calls a year; it is a breeding place for rats, flies and other insects. The defendant will require a new dump or disposal plant within three to five years. On August 28, 1951, the town council appropriated $20,815 to purchase approximately 30.6 acres on Talcott Mountain in the defendant town for use as a town dump. The defendant has no other plan for rubbish disposal and is making no attempt to solve the problem in any other manner. While an incinerator would eliminate problems of smoke and odors and reduce the evils of an open dump, a dump for ashes would still be required. Furthermore, an incinerator would

not remove the psychological factor which is associated with a refuse disposal plant and which adversely affects the value of property in the neighborhood.

The plaintiffs' properties comprise 279 to 379 acres situated on a high elevation in the neighborhood of the proposed dump. This land, as well as the land for a substantial distance on all sides, including the land of the defendant, is in an AAA residence zone, the highest residential classification of seven in the town. The best use of the area is for residential development in plots of three to six acres. For this purpose the land is reasonably worth $1000 to $1200 an acre.

The establishment of the dump as planned would greatly depreciate the value of the plaintiffs' land because the dump would create noxious smoke, litter, offensive and unhealthy odors, and vermin. As a result of the officially declared plan to use the defendant's land for a dump, property of the plaintiffs located within a radius of 1000 feet of that land has a present market value of only $500 an acre. The area is heavily wooded and a fire hazard would be created by an open dump. The proposed dump would occupy an abandoned stone quarry sixty feet deep. It abuts land of the plaintiff Gibbons. The damage to the plaintiffs' land will continue as long as the threat of the dump remains. The dump, if established, would constitute a nuisance to residential use within a 1000-foot radius. The plaintiffs have no adequate legal remedy and will be irreparably damaged if injunctive relief is denied.

The defendant argues (1) that the action is premature because it is founded only on mere fears or apprehensions and (2) that the plaintiffs are not

entitled to injunctive relief because they have an adequate remedy at law and have not proved irreparable injury. The first of these contentions obviously stems from our previously expressed words of caution for guidance of the court in the issuance of an injunction. "No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Indeed they may be absolutely groundless. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons. Not the applicant only, but the court, must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power." *Goodwin* v. *New York, N.H. & H.R. Co.,* 43 Conn. 494, 500. The finding of the trial court in the present case makes it clear that the apprehensions of the plaintiffs were amply justified. It was found not only that the establishment of the threatened open dump would create a nuisance in the future but also that the threat of such a dump had already caused a diminution in the market value of the plaintiffs' properties. Such findings rebut the defendant's claim that the issuance of the injunction was predicated on nothing but fears.

The gist of the defendant's claim that the plaintiffs have an adequate remedy at law is that they are protected by the zoning ordinance of the town because it provides that no dump may be established on land purchased by the town except by action of the board of appeals, from which action an appeal will lie to the court. Long before zoning ordinances

were conceived or thought of, a similar defense was made in this state to an application for an injunction against an encroachment on a town common. It was urged that the statutes made provision for the removal of encroachments by the public authorities. We then said: "But suppose the authorities are unwilling to institute proceedings. Where then will be the ample remedy? They are not bound to redress the plaintiffs' private grievances. They act solely for the public, induced by public considerations, when they act at all. 'Adequate remedy at law' means a remedy vested in the complainant, to which he may, at all times, resort, at his own option, fully and freely, without let or hindrance." *Wheeler* v. *Bedford,* 54 Conn. 244, 249, 7 A. 22. The last sentence has become a bellwether among principles relating to the issuance of injunctions. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 13, 37 A.2d 689; *George S. Chatfield Co.* v. *Reeves,* 87 Conn. 63, 66, 86 A. 750; *Atwood* v. *Partree,* 56 Conn. 80, 83, 14 A. 85. A claim, similar to that now advanced by the defendant, that an injunction should not issue because the plaintiffs' right to relief, if any, was obtainable under the zoning ordinance was met by us with the statement that equitable relief would avoid circuity, delay and expense. *Darien* v. *Webb,* 115 Conn. 581, 588, 162 A. 690. Relief under the zoning ordinance also "fall[s] short of affording the plaintiff a means of effectively, conveniently and directly enforcing the performance of the particular duty owing to him." *State ex rel. Heimov* v. *Thomson,* supra, 14.

The zoning ordinance of West Hartford, § 18 (A) (3), authorizes the board of appeals to grant an exception permitting the location of a dump in any zone "[w]hen in its judgment the public convenience and welfare will be substantially

served and the appropriate use of neighboring property will not be substantially or permanently injured." It is quite conceivable that the board of appeals might grant an exception allowing the creation of a dump in the location in question on the ground of public convenience and welfare. If it did, the issue on an appeal to the court would be merely whether the action was an abuse of the board's discretion. That is quite a different issue from the one presented in the present litigation. The question here is whether the establishment of a dump will be the creation of a private nuisance. For that reason a resort to the board of appeals does not offer the plaintiffs as adequate a remedy as is open to them in such an action as the present. It is, therefore, not an adequate remedy at law.

It is also apparent that, if the town is permitted to use the property as a dump, it will constitute a nuisance affecting the plaintiffs' property, and the creation and maintenance of such a nuisance will cause the plaintiffs irreparable injury. In the case of *Danbury & N.R. Co.* v. *Norwalk,* 37 Conn. 109, 121, we pointed out: "[I]t is a part of the wholesome policy of the law in its application to causes in this forum, to prevent an injury as well as to redress one, especially when the circumstances indicate essential wrong to the aggrieved party, which in its consequences is also likely to injuriously affect the public. Theoretically, as a general rule, chancery may not assume to exercise jurisdiction when there is adequate remedy at law. It does so practically, in numerous cases where the completeness of the legal remedy is disputed or doubtful; and sometimes also irrespective of that consideration, when it is manifestly better to prevent the perpetration of a wrong which will be not only

highly prejudicial to the party immediately threatened, but also directly or incidentally detrimental to the public."

The difficulty with the application of cases cited by the defendant is that there is in those cases an absence of the facts found here. The court's finding speaks cogently. There is damage. There is a threat of a nuisance. There is irreparable injury. There is no other adequate remedy. See *Point O'Woods Assn., Inc.* v. *Busher,* 117 Conn. 247, 250, 167 A. 546. The issuance of the injunction was warranted. *Wetherell* v. *Newington,* 54 Conn. 67, 74, 5 A. 858; see *Truesdale* v. *Greenwich,* 116 Conn. 426, 431, 165 A. 201; *Levy & Devaney, Inc.* v. *International Pocketbook Workers Union,* 114 Conn. 319, 324, 158 A. 795.

There is no error.

In this opinion the other judges concurred.