ARTHUR F. BUTZGY ET AL. *v.* TOWN OF GLASTONBURY
(12821)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 11, 1986—decision released April 7, 1987

*Charles C. Greenwald,* with whom, on the brief, was *Thomas M. Stephens,* for the appellants (plaintiffs).

*William S. Rogers,* with whom was *Michael B. Dashjian,* for the appellee (defendant).

DANNEHY, J. On appeal, the plaintiffs challenge the dismissal of their complaint in which they were seeking a declaratory judgment and injunctive relief. The action arose out of the proposed construction of an extension of a road in Glastonbury. The trial court, in dismissing the complaint, ruled that the court lacked subject matter jurisdiction because the claims should have been brought by way of an administrative appeal.

It appears from the record that all of the plaintiffs own real property on Eastbury Hill Road in Glastonbury. At the time this action was commenced, that road began at Manchester Road and ended in a cul-de-sac. In March, 1984, Hilltop Woods, Inc., a nonparty, applied to the Glastonbury town plan and zoning commission (commission) for approval to subdivide land adjacent to Eastbury Hill Road. In May, 1984, the commission approved the application for the subdivision on the condition that the applicant construct an extension to Eastbury Hill Road. The extension would connect

the road to Thompson Street, thereby opening East-
bury Hill Road to through traffic. Some of the plain-
tiffs in this action, together with other Eastbury Hill
Road residents, filed an administrative appeal from the
commission's decision contesting only the extension of
Eastbury Hill Road to Thompson Street. The commis-
sion, as well as Hilltop Woods, Inc., and its principal,
Lloyd Moody, were joined as appellees in that appeal.
The appellants alleged, inter alia, that the proposed
extension violated town ordinances, would have an
adverse effect on traffic, noise and the safety of East-
bury Hill Road, and would unreasonably impair the
public trust in natural resources. The appeal was with-
drawn on December 21, 1984, and on the same day,
Hilltop Woods, Inc., and its principal withdrew an
action they had filed against the residents. At no time
during these proceedings did the residents of Eastbury
Hill Road seek any temporary relief by way of a stay
or a temporary injunction. Construction of the exten-
sion began on February 26, 1985.

The complaint which forms the basis of this appeal
was filed in April, 1985.[1] The plaintiffs generally alleged
that the extension "would result in an illegal and haz-

---

[1] Because we will refer repeatedly to various portions of the complaint
in our analysis, the entire complaint is hereinafter reproduced:

"1. The following Plaintiffs are residents of the Town of Glastonbury
and all own property on Eastbury Hill Road: Arthur F. Butzgy, 335 East-
bury Hill Road; Diana Butzgy, 335 Eastbury Hill Road; Lee Cancellieri,
133 Eastbury Hill Road; John Cancellieri, 133 Eastbury Hill Road; Luther
Weeks, 123 Eastbury Hill Road; Denise Weeks, 123 Eastbury Hill Road;
Edward S. Elfman, 106 Eastbury Hill Road; Ronald Bogdan, 252 East-
bury Hill Road; Janet Bogdan, 252 Eastbury Hill Road; Charles H.
Nightingale, 266 Eastbury Hill Road; Loretta R. Nightingale, 266 East-
bury Hill Road; Robert Morrison, 411 Eastbury Hill Road; Laurel Morrison,
411 Eastbury Hill Road; James F. Fasi, 427 Eastbury Hill Road; Michael
V. Rosenberg, 151 Eastbury Hill Road; Victoria Rosenberg, 151 Eastbury
Hill Road; H. Ronald Kirkland, 414 Eastbury Hill Road; Victoria Kirkland,
414 Eastbury Hill Road; Michael Gentile, 406 Eastbury Hill Road; Josephine

ardous road condition and create a dangerous nuisance to persons residing along Eastbury Hill Road." Specifically, they alleged that the road as extended would violate minimum road width requirements and would

---

Gentile, 406 Eastbury Hill Road; Eugene S. Mendelson, 160 Eastbury Hill Road; Mary Ann Mendelson, 160 Eastbury Hill Road; all of the Town of Glastonbury, County of Hartford and State of Connecticut.

"2. Manchester Road, also known as Route 83, and Thompson Street, are public thoroughfares running in a generally North-South direction in the Town of Glastonbury, Connecticut.

"3. Eastbury Hill Road is a Town Road in the Town of Glastonbury, Connecticut, running in a generally easterly direction from Manchester Road and ending in a cul-de-sac.

"4. On or about March 21, 1984, Hilltop Woods, Inc. and/or Lloyd Moody (hereinafter 'Applicant'), not parties to this action, applied to the Defendant, Town Plan and Zoning Commission (hereinafter 'Commission'), for approval of a subdivision known as Hilltop Woods Subdivision, to be located on land adjacent to Eastbury Hill Road.

"5. On or about May 1, 1984, after several public hearings, the Defendant Commission published an approval of said subdivision application with a number of conditions attached thereto.

"6. The approval included a condition that Eastbury Hill Road be extended by the Applicant to intersect with Thompson Street, thereby opening Eastbury Hill Road to local, flow-through traffic.

"7. The action of the Commission in requiring that the Applicant connect Eastbury Hill Road, which is not an integral part of the subdivision being developed, to Thompson Street is an illegal and unconstitutional delegation of the Town's duty.

"8. The extension of Eastbury Hill Road to Thompson Street would result in an illegal and hazardous road condition and create a dangerous nuisance to persons residing along Eastbury Hill Road, including the Plaintiffs, in that:

"a. As extended, Eastbury Hill Road would violate the minimum road width requirements of Section 9.0 et seq. of the Subdivision and Resubdivision Regulations of the Town of Glastonbury.

"b. As extended, Eastbury Hill Road fails to preserve the integrity of the area as required by Section 9.2.5 (a) of the Subdivision and Resubdivision Regulations of the Town of Glastonbury in that all local streets shall be laid out so that their use for through traffic will be discouraged with particular attention being given to eliminating possible by-passes around congested areas and major intersections.

"c. The connection of Eastbury Hill Road to Thompson Street will result in an upgrading of the classification of said road under the Glastonbury Town Plan and Zoning Regulations to a 'collector street,' despite that the road is inadequately constructed to meet the minimum requirements for

fail to preserve the integrity of the area. They further alleged that the original portion of the road is inadequately designed and constructed to meet the requirements for safely handling the increased volume and

such classification.

"d. Eastbury Hill Road contains a substandard and dangerous curve, the hazard of which will be greatly exacerbated by the increased traffic volume and speed resulting from the connection of the road with Thompson Street.

"e. The connection of Eastbury Hill Road with Thompson Street will result in a substantial increase in traffic volume and thereby create a significant safety hazard to both drivers and pedestrians using the inadequate roadway.

"f. The introduction of non-local, flow-through traffic to Eastbury Hill Road will result in a substantial increase in traffic speed and thereby create a significant safety hazard to both drivers and pedestrians using the inadequate roadway.

"9. The Eastbury Hill Road extension has not yet been accepted as a public highway of the Town of Glastonbury pursuant to Section 2451 et seq. of the Ordinances of the Town of Glastonbury. Acceptance of the road by the Town would be a violation of said Ordinance.

"10. The imminent extension of Eastbury Hill Road to Thompson Street will result in irreparable harm, to the Plaintiffs individually and to the public, for the redress of which the Plaintiffs are without an adequate remedy at law.

"WHEREFORE, the Plaintiffs pray:

"1. For a declaratory judgment determining that the connection of Eastbury Hill Road to Thompson Street would be a violation of the Zoning Regulations of the Town of Glastonbury and creates a nuisance.

"2. That the Plan and Zoning Commission and/or the Town of Glastonbury be permanently enjoined from requiring and/or permitting that Eastbury Hill Road be connected to Thompson Street as a condition of the above stated subdivision approval until said Eastbury Hill Road is upgraded to meet adequate safety standards and is in conformance with town zoning regulations.

"3. That the Town Plan and Zoning Commisison or the Town of Glastonbury be permanently enjoined from permitting Eastbury Hill Road be connected to Thompson Street directly or indirectly, in any manner until Eastbury Hill Road is upgraded to meet adequate safety standards and be in conformance with town zoning regulations.

"4. That the Town of Glastonbury be permanently enjoined from accepting Eastbury Hill Road and/or any extension of Eastbury Hill Road as a Town road until said road is upgraded to conform to Zoning Regulation requirements.

"Dated at Glastonbury, Connecticut this 1st day of March, 1985."

speed of traffic that would result from the extension. Based on these allegations, the plaintiffs requested a declaratory judgment and injunctive relief.

Upon motion of the defendant, the trial court dismissed the action on jurisdictional grounds. The court based its decision on the rule that "when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979); see also *Davis* v. *Yudkin,* 3 Conn. App. 576, 578, 495 A.2d 714 (1985). Because the plaintiffs abandoned their appeal from the decision of the commission, the court held that it lacked subject matter jurisdiction over the action.

Before addressing the issue of whether the motion to dismiss was properly granted, we must first consider whether this appeal is moot. On August 30, 1985, the extension of Eastbury Hill Road was completed and opened to traffic. At the time this appeal was argued, the parties were uncertain whether the extension had been officially accepted by the town of Glastonbury. The defendant pointed out, however, that such an acceptance does not involve the exercise of discretion on the part of town officials but is instead, a ministerial act. The extension having been completed, the defendant asked this court, prior to our hearing the appeal, to dismiss the appeal on mootness grounds. We denied the motion without prejudice to the defendant so that the mootness claim could be renewed at the argument on the merits.

It is beyond dispute that "the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the grant-

ing of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); see also *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985). " 'In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal. . . .' *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979)." *Shays* v. *Local Grievance Committee,* supra, 571–72.

The defendant contends that we can no longer grant any of the relief sought by the plaintiffs and that their appeal is therefore moot. We do not agree. In the second request for relief, the plaintiffs seek an injunction prohibiting the town of Glastonbury and/or the commission "from requiring and/or permitting that Eastbury Hill Road be connected to Thompson Street" until the road is upgraded to meet adequate safety standards and is in conformance with town zoning regulations. The third prayer for relief contains language similar to that quoted from the second request. The defendant asserts that an injunction prohibiting the construction of the extension can no longer be granted because the extension is completed. This argument, however, overlooks the language of the second and third prayers for relief. The plaintiffs do not seek an injunction against the "construction" of the extension, but instead wish to prevent Eastbury Hill Road from being "connected" with Thompson Street. Although the extension has been completed, we see no reason, assuming, arguendo, that the plaintiffs are successful on the merits of their appeal, why a court could not grant the relief requested by ordering that temporary barricades be

erected at the ends of the extension. These barricades would effectively prevent the connection of Eastbury Hill Road to Thompson Street until the alleged illegalities and safety problems are eliminated. Having determined that a court could still afford the plaintiffs relief under their second and third prayers for relief, we need not consider whether the requests for relief made in the first and fourth prayers are also efficacious.

We turn to the main issue raised in this appeal, namely, whether the trial court properly dismissed the plaintiffs' action. Under the rule set forth in *Carpenter* v. *Planning & Zoning Commission,* supra, a party who has a statutory right of appeal from the decision of an administrative agency may not, instead of appealing, institute an independent action to litigate the very issue which the appeal is designed to test. See also *Davis* v. *Yudkin,* supra. This doctrine is, in essence, a restatement of the rule that "when an adequate administrative remedy is provided by law, it should be exhausted." *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977). Relying on the *Carpenter* doctrine, the trial court dismissed the plaintiffs' action, ruling that it lacked subject matter jurisdiction over the case because the plaintiffs had not pursued their statutory right of appeal. See General Statutes § 8-28. We find no error in the trial court's dismissal of the present action.

The plaintiffs acknowledge the holding of *Carpenter,* but assert that an appeal from the action of the commission here could not resolve the issues raised in their complaint, specifically, their claim of p_ivate nuisance. Although paragraph 8 of the plaintiffs' complaint alleges that the extension of Eastbury Hill Road would "create a dangerous nuisance to persons residing along Eastbury Hill Road, including the Plaintiffs," an examination of the specific allegations made in support of this "nuisance" claim reveals that the plaintiffs are

actually seeking to resolve the questions of whether the commission acted in accordance with town ordinances and whether the road as extended is a safety hazard to drivers and pedestrians. These issues are of a sort that must have been considered by the commission at the time it ordered the extension and that would have been reviewable by a court in an administrative appeal from the commission's decision.

Subparagraphs 8 (a), (b) and (c) of the plaintiffs' complaint allege respectively that Eastbury Hill Road, as extended, "would violate the minimum road width requirements of Section 9.0 et seq." of the Glastonbury subdivision and resubdivision regulations, would fail "to preserve the integrity of the area as required by Section 9.2.5 (a)" of those regulations, and would "result in an upgrading of the classification of said road under [town regulations] to a 'collector street' " despite the fact the road is inadequately constructed to meet mimimum requirements for such a classification.[2] Under

---

[2] The applicable Glastonbury subdivision and resubdivision regulations are as follows:

Section 3.3 provides: "PUBLIC HEALTH AND SAFETY. No land shall be subdivided unless it shall be of such character that it can be used for building purposes without danger to health and the public safety regulations of the Town and State of Connecticut, as may be amended hereafter, and unless it provides adequately for water, drainage and sewerage, and, in areas contiguous to brooks, rivers, or other bodies of water subject to flooding, including tidal flooding, for protective flood control measures."

Section 3.4 provides: "STREETS. No subdivision plan shall be approved unless the proposed streets are in harmony with existing or proposed principal thoroughfares and so arranged and of such width to provide an adequate and convenient system for present and prospective traffic needs."

Section 9.2 provides: "STREETS. Streets shall be laid out in such a way as to provide a safe and efficient street system and network to accommodate present and future needs of the area in accordance with the Plan of Development of the Town."

Section 9.2.1 provides: "CLASSIFICATION OF STREETS AND HIGHWAYS. The Commission shall classify all the streets shown on the subdivision map. There shall be four (4) classifications of streets:

"(a) ARTERIAL STREET. The Commission shall classify a street an 'Arterial Street' as one which provides for thru traffic movement between areas and

General Statutes § 8-25, a planning commission is authorized to adopt regulations to control the subdivision of land and in passing on plans for a proposed subdivision, a commission is bound by its own regulations. See *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 91, 368 A.2d 24 (1976). The Glastonbury town

---

across the town, direct access to abutting property, and where the projected average daily traffic 20 years after the completion of construction is over 3,000 vehicles.

"(b) COMMERCIAL AND/OR INDUSTRIAL STREET. The Commission shall classify a street a 'Commercial and/or Industrial Street' as one which provides direct access to or circulation within business and industrial areas, and where the percentage of truck traffic is over 10% of the average daily traffic immediately after completion of construction.

"(c) COLLECTOR STREET. The Commission shall classify a street a 'Collector Street' as one which provides for traffic movement between arterials and local streets, direct access to abutting property, and where the projected average daily traffic 20 years after completion of construction is between 800 and 3,000 vehicles.

"(d) LOCAL STREET. The Commission shall classify a street a 'Local Street' as one which provides for direct access to abutting land, for local traffic movements, and where the projected average daily traffic 20 years after completion of construction is under 800 vehicles."

Section 9.2.2 provides: "STREET WIDTH. The following dimensions shall be satisfied according to their classification:

| "Classification | Right-of-Way | Roadway-Width |
|---|---|---|
| Arterial Street | 80 Feet | 48 Feet |
| Commercial and/or Industrial Street | 60 Feet | 34 Feet |
| Collector Street | 60 Feet | 30 Feet |
| Local Street | 50 Feet | 26 Feet (24')*" |

----------

"*24' local roadway width may be approved by the Town Plan & Zoning Commission only upon receipt of a recommendation from the Director of Public Works. [Footnote in original.]"

Section 9.2.3 provides: "CUL-DE-SAC STREET. Where permanent cul-de-sac streets are included in a subdivision, they shall not exceed one thousand (1000) feet in length. They shall be equipped with a turnaround which has a minimum right of way radius of sixty (60) feet and a minimum pavement radius of fifty (50) feet.

"When a cul-de-sac is proposed as a temporary measure pending future development of adjoining properties, it shall be so designed as to be feasible of continuation in the adjacent tract. When there is a possibility of an

plan and zoning commission has adopted specific regulations pertaining to subdivisions. Whether Eastbury Hill Road, as extended, complied with the Glastonbury subdivision regulations was clearly a matter which the commission was empowered to determine, and the question of whether the commission acted illegally or in excess of its authority was a matter which might have been considered in an administrative appeal. See *Nicoli* v. *Planning & Zoning Commission,* supra, 91–94; *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594 (1963). It is interesting to note that one of the claims made by the plaintiffs in the administrative appeal which was later withdrawn was that the road as extended violated town ordinances.

The remaining subparagraphs supporting the plaintiffs' allegation of nuisance allege respectively that a

extension of a street, all portions of the cul-de-sac, including pavement, grass strip and sidewalk and fall outside the limits of the normal right-of-way width shall occupy the space by virtue of an easement delivered to the Town before acceptance of the subdivision.

"The developer extending a street from cul-de-sac shall be required to remove the existing pavement outside of the standard travelled way, loam and seed said area in which pavement has been removed, and install curbs and sidewalks in the original cul-de-sac in accordance with Town requirements all at his own expense.

"The Commission may waive the 1000' maximum length of a cul-de-sac street after considering public health, safety, and welfare."

Section 9.2.5 provides: "PRESERVING THE INTEGRITY OF THE AREA. In the development of an area, the developer shall take adequate steps to minimize adverse effects that such development might have on the areas. The following guidelines should be followed whenever possible:

"(a) THROUGH-TRAFFIC PROHIBITION. All local streets shall be laid out so that their use for through traffic will be discouraged. Particular attention should be given to eliminating possible by-passes around congested areas and major intersections.

"(b) RELATION TO TOPOGRAPHY. The street of a proposed subdivision shall bear a logical relationship to the topography, and all streets shall be arranged so as to obtain as many of the building sites as possible at or above the grade of the street. All natural features shall be preserved where so required by the Commission."

curve on Eastbury Hill Road will become more hazardous because of the extension, that the road as extended will result in an increase in traffic volume, creating a safety hazard to drivers and pedestrians, and finally that the extension will lead to increased traffic speed, creating a safety hazard. Similar allegations were made in the withdrawn administrative appeal. Section 3.4 of the subdivision and resubdivision regulations of the town of Glastonbury provides that no subdivision plan shall be approved unless the proposed streets are in harmony with other streets and are of such width as to provide adequately for traffic needs. Other provisions require the commission to consider other aspects of public health and safety in determining whether to approve a proposed subdivision application. The commission here clearly was empowered and, in fact, was required to consider traffic safety in ruling on the proposed subdivision and in ordering Eastbury Hill Road extended. Whether the commission has acted rationally and reasonably in exercising the police powers of the municipality to protect the health, safety and welfare of its residents could properly have been considered through an administrative appeal. See, e.g., *Nicoli* v. *Planning & Zoning Commission,* supra, 94–97.

We have already stated that the rule of *Carpenter* precludes a party from litigating in an independent action, the *same issues* which could be resolved in an administrative appeal. The plaintiffs vigorously assert that what they seek to put at issue is *not* the legality or propriety of the administrative decision but instead the effect of the commission's actions on the plaintiffs' enjoyment of their land. They argue that our holding in *Brainard* v. *West Hartford,* 140 Conn. 631, 103 A.2d 135 (1954), creates a "private nuisance" exception to *Carpenter* and that like the plaintiff in that action, they should be allowed to maintain a nuisance action without having first exhausted their administrative reme-

dies. Whether *Brainard* v. *West Hartford,* supra, in fact creates a "private nuisance" exception to the rule of *Carpenter,* need not be determined. Even if there were such an exception, the allegations underlying the plaintiffs' claim simply do not support an action in private nuisance. We have already said that the plaintiffs assert essentially only that the extension violates town ordinances and will pose a risk to the safety of drivers and pedestrians. These issues are the very issues which an administrative appeal is designed to resolve. In deciding the narrow jurisdictional issue before us, we are, of course, limited to the well pleaded facts of the plaintiffs' complaint. *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 593, 424 A.2d 285 (1979). The plaintiffs have not alleged an injury by reason of their ownership of land, such as a decrease in the value of their property. *Brainard* v. *West Hartford,* supra, 633. Nor have they alleged any noxious quality that the "natural tendency of the condition was to cause damage and inflict injury." *Warren* v. *Bridgeport,* 129 Conn. 355, 359, 28 A.2d 1 (1942); see generally D. Wright & J. Fitzgerald, Connecticut Law of Torts § 128, p. 288.

The rule of *Carpenter* is subject to a few limited exceptions, one being that a party may bring an independent action to test certain constitutional issues without first having resorted to an administrative appeal. See *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979). We have not, however, allowed conclusory assertions of unconstitutionality which are unsupported by the record and by the allegations underlying the claims to provide a bypass of the administrative appeal mechanism. See *LaCroix* v. *Board of Education,* 199 Conn. 70, 86, 505 A.2d 1233 (1986); see also *Cretaro* v. *Equitec Real Estate Investors Fund XII,* 6 Conn. App. 317, 320, 505 A.2d 22 (1986). The same reasoning may be applied in the

present case. The mere use of the term "nuisance" in a complaint will not magically create a right to circumvent the administrative appeal process. Our focus in a case such as the present one has been and continues to be whether the issues actually raised in the plaintiffs' complaint can be fully adjudicated in an administrative appeal. See *LaCroix* v. *Board of Education,* supra, 84. In this case, the issues underlying the plaintiffs' action could have been resolved by the appeal process set forth in General Statutes § 8-28. The trial court's dismissal of the action was therefore not erroneous.

The plaintiffs also argue that a dismissal of this action violates article first, § 10, of the Connecticut constitution in that it would deprive them of the right to redress for the common law right of action for nuisance. Article first, § 10, provides that "[a]ll courts shall be open, and every person for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale or delay." This provision guarantees the availability of courts for redress of recognized injuries and also creates a class of rights which, because of their existence prior to the adoption of the provision, are incorporated into and protected by the state constitution. *Gentile* v. *Altermatt,* 169 Conn. 267, 286–87, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). We explained in *Gentile* v. *Altermatt,* supra, that the legislature may restrict or abolish common law rights to recover for certain injuries, if it creates a "reasonable alternative" for the enforcement of such rights.

The plaintiffs contend that unless the administrative appeal procedure constitutes a reasonable alternative to an action for nuisance, a dismissal of their action violates article first, § 10. Our response to this claim is closely tied to our response to the previous claim

made by the plaintiffs. The issues underlying the plaintiffs' action, an action which they label one of nuisance, are issues which could have been resolved in an administrative appeal. The plaintiffs did possess, therefore, a "reasonable alternative" to litigating their claims in an independent action but chose not to pursue the statutory appeal procedure. We fail to discern how any infringement on rights protected by article first, § 10, will result from our decision.

There is no error.

In this opinion the other justices concurred.