[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A — INTRODUCTION CT Page 4025
The instant matter, referred to the undersigned, involves an acrimonious dispute between two neighbors, owners of adjacent houses on First Avenue in West Haven, Connecticut. The plaintiffs are the owners of a one-family house at 147 First Avenue, and the defendant is the owner of a two-family duplex house at 143-145 First Avenue.
The plaintiffs, Zampa, husband and wife, have owned and lived in their house for approximately 12 years; whereas the defendant, Littleford, has owned and lived in her adjacent duplex house for about 6 years.
The plaintiffs' complaint herein sets out (Par. 11) the claim that the defendant created and allowed a "private nuisance" to exist because cars parked in front of her house created an "inherently dangerous condition for pedestrians and cars by blocking the view from plaintiffs' property" of vehicles traveling north and south on First Avenue.
A trial was held with voluminous testimony adduced, including the parties themselves, and with many photographs as exhibits of the locus in dispute. Both parties have submitted lengthy legal memoranda reviewing the testimony and evidence, and asserting their legal claims.
The undersigned trier has analyzed the evidence in depth and based thereon, and on his detailed trial notes, the following finding is made:
B — FINDING OF FACTS
1) First Avenue, in the area of the two houses involved herein, has a considerable volume of motor vehicle traffic which, at times, travels at considerable speed, particularly when headed for the water at the southerly terminus of First Avenue.
2) The plaintiffs claimed to have encountered difficulty exiting from their driveway, due to their inability to see the cars traveling southerly on First Avenue because their lines of sight were blocked by cars parked on the front of the defendant's property.
3) The rear yards of both houses involved have a common easterly boundary, extending to the water's edge of Long Island CT Page 4026 sound.
4) Both houses have single lane asphalt driveways on the north sides.
5) The Zampa house has a frontage of 50 feet, whereas the Littleford house has 70 feet of adjacent frontage on First Avenue.
6) The edges of the sidewalks in front of each house join evenly at their westerly ends.
7) The only document introduced in evidence (Defendant's Exhibit 1) concerning the sidewalk construction itself, is a copy of a "Sidewalk Permit", dated July 21, 1988, issued by the Department of Public Works of the City of West Haven, on behalf of the defendant, Littleford, to "Steve May Concrete" for "the purpose of constructing bituminous concrete sidewalks" in front of 143 First Avenue — the southernmost portion of the defendant's duplex house, which she leased out to tenants.
8) Sometime after this permit was issued, the defendant, Littleford, did have a small gravel-based driveway installed in front of the tenant's portion of the sidewalk.
9) This gravel-based driveway was not utilized on a regular basis after the plaintiffs complained to the West Haven Zoning Authority that its use by the defendant, or the use she allowed her tenants, and the tenant's permittees, was illegal.
The plaintiffs claimed the objectional parking existed for a period of about 1-1/2 years, to approximately September 1990, when the defendant was served with the citation by the West Haven Zoning Authority, alleging she was in violation of the zoning regulations.
The evidence adduced was that sometime after receiving the permit (Exhibit 1), the defendant, Littleford, had her contractor widen the entire sidewalk in front of her house by laying down concrete from the edge of the original sidewalk to the edge of the roadway of First Avenue, making the sidewalk installed approximately 10 feet wide.
This work was done without the installation of a curb at the edge of the new sidewalk, as it adjoined the vehicular travel portion of First Avenue.
Both houses are set back approximately 26 feet from the travel portion of First Avenue, and the two houses sit about 16 feet back of the near edge of the sidewalks in front of each other. CT Page 4027
Plaintiffs' Exhibit W, and Defendant's Exhibits 7-10, are photographs showing considerable visibility southerly on First Avenue beyond the defendant's property, irrespective of whether cars are parked in front of the defendant's house, or on the sidewalk area in front of her property.
The defendant, Littleford, had no control over the prevailing traffic situation, as alleged in Par. 10 of the Complaint, that "First Avenue carries a heavy volume of traffic that generally travels at high speeds."
When no cars are parked on the defendant's sidewalk, the plaintiffs do have an unobstructed view, to the south across First Avenue, of approximately 10 feet (the width of defendant Littleford's sidewalk).
If there are a few cars parked in front of the defendant's property, but none blocking the view across her sidewalk, the situation confronting the plaintiffs in exiting from their driveway is not a dangerous one.
Par. 8 of the complaint alleges that the defendant in "so doing, in effect created a sixty foot wide driveway in front of her house that she uses as a parking lot."
Par. 9 claims the defendant parks, or permits persons to park, numerous vehicles across the public sidewalk on the front of her house, resulting in the blocking of plaintiff's view of the street and oncoming traffic.
Par. 11 sets forth the essence of the plaintiffs' case, that "said acts and conduct of the defendant constitute a private nuisance in that the parked cars create an inherently dangerous condition for pedestrians and cars by blocking the view from plaintiffs' property of oncoming traffic."
Par. 12 recites that "defendant's parking and use of her front lawn as a parking lot is an unreasonable use of her property and detracts from the harmony and character of the surrounding neighborhood.
Par. 13 claims that the plaintiffs' rights to a "tranquil residential district" have been violated by the defendant's actions causing a "detriment to the life and health" of the plaintiffs.
Par. 14 is a catch-all in alleging that "as a result of said acts and conduct", the plaintiffs are "irreparably harmed, injured and damaged." CT Page 4028
And, Par. 15 claims that the plaintiffs' home has greatly depreciated in value and has become undesirable as a dwelling."
Par. 16 alleges a violation of 14-250a of the General Statutes, which prohibits the parking of vehicles on sidewalks.
Par. 17 makes the claim that "unless the defendant's acts and continued maintenance of the front yard parking lot are enjoined, plaintiffs will continue to suffer great irreparable hardship and damage."
And, finally, Par. 18 alleges that plaintiffs have no adequate remedy at law, and in addition to money damages, the plaintiffs claim a temporary or permanent injunction.
Both plaintiffs in their testimony admitted that, as they exit from their driveway to enter First Avenue, their view of vehicles traveling north is impeded only if cars are parked on the sidewalk in front of the defendant's house.
The evidence warrants the finding that sometimes the entire width of defendant's sidewalk was utilized for parking of vehicles, and that at other times, one or more cars would be parked in the driveway on the front of the defendant's property, between the house and the sidewalk.
The defendant, Littleford, filed a counterclaim alleging that the plaintiffs, themselves, created a private nuisance in their use of the rear of their house, and, also claimed injunctive relief.
With the exception of one picture (Exhibit D), taken before July 1988, no one of the other photographs show that a vehicle parked on the front of the Littleford property actually belonged to the defendant, or to any of her family members. In fact, the vehicles shown in the photographs in evidence belonged to the defendant's tenant, or to a member of his family, or to a visitor of the tenant.
C — CONCLUSIONS OF LAW
Based on a detailed examination of the evidence adduced, and the exhibits, including the numerous photographs of the scene, and weighing the testimony of the parties themselves, the undersigned reaches the following conclusions and enters the orders set out hereinafter.
1) Although the plaintiffs made claim in Par. 11 of their complaint that the defendant created a private nuisance affecting CT Page 4029 pedestrians, this allegation is not found proven and is, therefore, denied.
2) The legal definition of a condition, relative to the ownership of real property, which can be found to constitute a private nuisance, is correctly set forth in Gesswin v. Beckarth,35 Conn. Sup. 89, 90 (1978), where it states, "a private nuisance exists only where someone is injured in relation to a right which he enjoys by reason of his ownership of an interest in land."
3) The plaintiffs do not dispute the defendant, Littleford's, contention that she had a legal property right to park her car in her own driveway — even if the plaintiffs found that their view of traffic traveling on First Avenue might thereby be adversely affected.
4) The plaintiffs also recognized, and admitted, that as long as cars were not parked across the defendant's sidewalk, they had no problem seeing oncoming traffic, once their vehicles reached the end of their driveway, just before entering the travel portion of First Avenue.
5) If there were cars parked in front of the Littleford property, constituting an inherent danger to plaintiffs' use of their driveway and property, the defendant argues the burden was upon the plaintiffs to show that a condition of danger was created by some positive act of the defendant, Littleford.
Citing the decisions of our Supreme Court in Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 34 (1978), the defendant maintains that the four elements which the plaintiffs were required to prove, in order to establish the existence of a private nuisance on defendant's property, were not established by the evidence adduced by the plaintiffs.
6) It is regrettable that one, Barton, the defendant's tenant at 143 First Avenue during most of the time when cars were claimed to be parked in front of his rented portion of the defendant's premises, was not made a party defendant in this case. Gesswin v. Beckarth, 35 Conn. Sup. 89 (1978).
7) Relying on the legal doctrine of "comparative evaluation," set forth in Maykut v. Plasko, 170 Conn. 310, 315 (1976), the undersigned concludes that the defendant, owner Littleford, is now aware of the fact that a private nuisance can be created if cars are parked on the sidewalk in front of her house.
8) And, at least since the summer of 1991, the defendant has been conforming to the West Haven zoning regulations in issue. CT Page 4030
9) Based on the Maykut decision, supra, the undersigned enters an Order enjoining and ordering that the defendant, property owner Littleford, and any tenant of hers, is required to make reasonable use of the sidewalk in front of both 143 and 145 First Avenue, so as not to cause any restriction of reasonable use by the plaintiffs, of their property at 147 First Avenue.
10) The contention of the defendant, set forth in her trial brief of November 22, 1981 (p. 7), that any difficulty the plaintiffs may encounter in exiting from their driveway is comparable to that encountered by any operator of a motor vehicle exiting a driveway on a busy street in West Haven, such as First Avenue, merits due consideration.
11) Additionally, her argument that because there is no parking permitted on First Avenue itself, the visibility of oncoming traffic afforded to the plaintiffs is greater than that existing in many other driving situations in West Haven, also appears sound and merits due consideration.
12) And the argument advanced by the defendant that, if there are cars parked on the sidewalk in front of her house, the situation created is similar to that found on any West Haven street where cars are allowed to park alongside the travel portion of the roadway, likewise must be given due weight in trying to balance the interests of the parties hereto.
13) Furthermore, the contention of the defendant that, vis-a-vis, the claims of the plaintiffs, in their complaint, Par. 10, what makes the condition of travel on First Avenue dangerous, is the narrowness of its travel portion, and the high rate of speed of the vehicles that usually traverse it, is a built-in hazard for all owners of property on the easterly side of First Avenue, is valid and merits consideration in weighing the reasonable rights of the respective parties in the uses made of their properties.
14) Based on the evidence adduced, the undersigned accepts the claim of the defendant, Littleford, that a difficult, built-in road condition exists in the front of the plaintiffs' house on First Avenue, for travel in a southerly direction; and that it is a condition essentially inherent in their ownership of their property.
15) In the instant matter the issue raised in the evidence, is whether it was during the occupancy of the then tenant of the defendant, Barton, that the major usage of the area in front of 143 First Avenue, the tenant's portion, occurred; and that he was responsible for the illegal parking of cars and the making of car repairs thereon. CT Page 4031
And the issue of who exercised control of the front of the defendant's property is an issue of fact which is part of the plaintiffs' burden of proof. See Tippetts, supra, p. 185.
Further, the issue raised by the defendant, Littleford, is that the nuisance, if found established, must have been the proximate cause of any damage suffered by the plaintiffs.
The undersigned notes, however, that there was no element of absentee ownership involved herein, since the defendant, Littleford, lived in the same premises, occupying the left half of this duplex house during the entire period involved herein. The Kostyal case, supra, p. 99, makes the trenchant observation that whether the condition complained of constituted a nuisance involves also a consideration of all relevant facts, including its location.
16) Although the defendant recognizes that, General Statutes14-250a is penal in nature and prohibits parking on a public sidewalk, she submits that this, in and of itself, does not automatically clothe the plaintiffs with legal or equitable rights to sustain an action based on private nuisance.
17) Moreover, since the plaintiffs were confronted with a violation of a penal statute, they had available to them a remedy-at-law, by invoking the authority of the West Haven Police Department to force compliance with its provisions. See Butzgy v. Glastonbury, 203 Conn. 109.
Relying on the analyses made by our Supreme Court in Maykut v. Plasko, 170 Conn. 310, 314 (1976); Kostyal v. Cass, 163 Conn. 92
(1972); State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177
(1987); the undersigned has endeavored to apply a functional test as advocated in those decisions, to determine whether the defendant used her property in such a negligent manner that it subjected her to liability for a private nuisance. State v. Tippetts, supra, p. 183.
The defendant Littleford's attorney argues in his legal brief that, although the currently effective, August 1988 zoning regulation (which superseded the May 1988 one), does not allow front yard parking, this does not constitute an absolute prohibition, since it does provide for a discretionary front yard parking "where alternatives are impractical." And defendant's attorney further argued that the regulation in issue does not apply to multi-family dwellings, in which category the defendant Littleford's property falls.
Continuing his reliance on the Maykut v. Plasko decision, supra, page 314, he submits that "the courts have established a CT Page 4032 weighing test comparing the conflicting interests of an owner to use his property as he deems fit, as long as such use does not cause unnecessary damage or annoyance to his neighbor's use of his own property.
However, account must be taken of the fact that if the plaintiffs drive their vehicles fronts forward into their driveway, its width would not permit a turning around. As operators of vehicles backing out of their driveway, they must wait until the vehicle they are driving reaches the front of their house, or arrives at the end of the driveway, preparatory to entering First Avenue.
The defendant has questioned whether the evidence sustains the plaintiffs' claim that the defendant did not exercise sufficient control over her then tenant, Barton, in his use of the southerly portion of her house rented by him. And she submits that she is not legally responsible for the use of the property made by the tenant and/or his permittees, to park cars directly in front of his leased portion of the duplex house.
Although it may be correct law that a landlord "is not, ipso facto", responsible for a tenant's activity which created a private nuisance, there was sufficient evidence adduced to warrant a conclusion that the defendant owner, Littleford, was aware of the tenant's use of the driveway in front of the leased portion of the front of subject duplex house, and that she did nothing to prevent the private nuisance from being created and allowed to exist for a considerable period of time.
The undersigned concludes, nonetheless, that the defendant, Littleford, was responsible for the creation of a private nuisance by her tenant, Barton, in front of his leased premises, during the period of approximately two years after she received the permit in July 1988, and she proceeded to widen the sidewalk in front of her property and constructed the gravel driveway in front of 143 First Avenue — the tenant's part of the duplex.
This justifies that recompense be made to the plaintiffs for the failure of the defendant to control the use being made of the front of her house to prevent unreasonable parking, directly affecting the plaintiffs' reasonable right of exit to the travel portion of First Avenue.
In an attempt to do equity to the parties, and based on the relevant evidence found proven, and in the light of the applicable law as discussed herein, the undersigned enters Judgment with Orders as follows:
D — JUDGMENT AND ORDERS CT Page 4033
1) The defendant is ordered to install forthwith a curbing at the edge of the sidewalk in front of her premises, where the sidewalk abuts the travel portion of First Avenue, which shall be rounded at its top edge to a height of five (5) inches.
2) The plaintiffs are ordered to remove the hedge presently existing on the southerly side of their driveway, so as to improve their visibility of cars traveling on First Avenue.
3) The plaintiffs have failed to sustain their burden of proof that the claimed parking by the defendant, her permittees, particularly her tenant, Barton, is persuasive enough to uphold their claim of a depreciation in value of their house.
And, since no sufficient proof was adduced by the plaintiffs to warrant upholding their claims of a diminution in the market value of their property at 147 First Avenue, their claims in this regard are denied.
4) The defendant's allegations in her Counterclaim that the plaintiffs created a private nuisance by their failure to properly maintain the front and rear of their property, are not found proven and are hereby denied.
5) Resorting to the legal principal of "respective balancing" of the interests of the parties involved, the defendant is enjoined from using the front portion of her property, beyond sixteen (16) feet from the end of the porch in front of her property, for the parking of motor vehicles.
In final entry of Judgment in this case, the defendant, Ellen Littleford, is ordered to pay as damages to the plaintiffs, Kenneth and Palma Zampa, husband and wife, the sum of $5,000.00, payable as follows:
 1) The sum of $1,000.00 within thirty (30) days of date of entry of this judgment;
 2) The balance of $4,000.00 is ordered to be paid at the rate of $500.00 on the first day of each subsequent month until the said balance is paid in full;
 3) The plaintiffs are entitled to receive their costs on their complaint calculated by the clerk's office. But no costs shall be allowed to the plaintiffs relative to the defendant's counterclaim.
CT Page 4034
Judgment is entered accordingly.
A. FREDERICK MIGNONE, STATE TRIAL REFEREE