The plaintiff, Michael J. Saccardi, is a teacher in the Stamford public school system who, in addition to his regular teaching positions, has served in various capacities as an assistant coach and later as head coach of men's varsity basketball teams. Most recently, in 1991, he completed a three-year contractual assignment as head coach of the men's varsity basketball team for Westhill High School. At the expiration of his three-year term and in compliance with standard procedure, the position of head coach for the next three-year period was posted for interested applicants, among whom was the plaintiff.
The individual defendants are H. Bruce Tucci, the principal of West Hill High School; Peter H. Horoshack, presently the superintendent of schools for the City of Stamford; and William R. Papallo, the immediately preceding superintendent about whose acts the plaintiff makes complaint. Also designated as a defendant is the Stamford Board of Education.
The plaintiff alleges that, during his tenure as both assistant coach and head coach of scholastic athletic teams, he received yearly written performance evaluations. He consistently achieved the highest scores on all his performance evaluations.
In 1990, an allegation of recruitment violation was made against the Westhill High School men's basketball team and the plaintiff as coach. The initial investigation by the Stamford School System authorities found no violation. The matter was, however, referred to the Connecticut Interscholastic Athletic Conference (CIAC) for review. After considering the material supplied and after an additional investigation, the Executive Director of the CIAC found reasonable grounds to believe that Westhill High School had violated the CIAC rule prohibiting CT Page 5370 recruiting and referred the matter to the CIAC Board of Control for a hearing.
Before the hearing, the Stamford School System and the CIAC entered into a settlement agreement which involved probationary status for Westhill High School athletic programs for three years and the payment of a $3,000.00 fine. The plaintiff, as one of the subjects of the investigation, disputed the allegations and stated that he stood ready to contest the allegations. Nevertheless, under what he claims he believed to be a threat of termination and to enable the Stamford School system to achieve its agreement with the CIAC, the plaintiff entered into an agreement with the Stamford superintendent's office in December of 1989.
The agreement reads:
In consideration of the mutual promises set forth herein, the undersigned agree as follows:
 1. The administration of the Stamford Public Schools agrees not to discipline coach Michael Saccardi for alleged recruiting and other alleged violations of CIAC rules, except as set forth herein.
 2. In consideration of such forbearance, Michael Saccardi agrees to:
 a. Pay the Westhill High School the amount of $500 which amount may be deducted from the total amount due Mr. Saccardi for coaching services for 1989-90 should Mr. Saccardi so chose.
 b. Reimburse Westhill High School $235 for expenditures made by him for participation of his team or members of his team in the summer league.
 c. Be placed on probation as a coach through the 1990-91 basketball season.
 3. The execution of this agreement in no way constitutes any admission by Michael Saccardi of any recruiting violation.
At the end of the 1990-91 season, the plaintiff's contract as coach of the Westhill High School's men's varsity basketball team having terminated, the position was posted for interested applicants. The plaintiff applied for the position, as did others.
The procedure for appointment of a head coach, has been established as a result of negotiation between the Stamford Board of Education and the union representing Stamford teachers, the CT Page 5371 Stamford Education Association (SEA). Generally, the principal of the school where the vacancy exists, will review the applicants and make recommendations to the superintendent of Schools through the personnel office. Appointments of a head coach are for three years, absent just cause for removal, and positions shall be posted at the end of such term.
The procedure in effect for 1991 states, in part:
2. The following will be considered for the selection of candidates where applicable.
a) Length of service as a coach in the specific sport.
 b) Length of service on the level below that for which applied: e.g. assistant track coach applying for head track coach position to be credited one year for each two full years service.
c) Written evaluation as a coach.
 If all of the above factors are equal, preference will be given to the unit member.
 The building principal at the location of the vacancy will review the applicants and make recommendations to the Superintendent of Schools through the Personnel Office. Where appropriate the principal will consult with the District Department Head of Interscholastic Sports. . . . The superintendent will provide the final approval for all appointments.
In 1991, another applicant was recommended by Principal Tucci to the superintendent who, in turn, appointed the other applicant. Believing that the defendant Tucci had not limited himself to the objective standards set forth in the appointment procedures and had given weight to the CIAC allegations, the plaintiff filed a grievance.
The teacher contract agreement negotiated between the defendant Board of Education and the Stamford Education Association in effect for the period July 1, 1989 through June 30, 1992 establishes a formal grievance procedure for any teacher or teachers who believe there has been a violation, misinterpretation or misapplication of the contract, or of the rules, regulations, administrative directives or policies of the Board of Education. The procedure requires that the grievance be discussed with the member's immediate supervisor or principal looking to resolution of the matter informally. This is level one. If not resolved with the principal, the next level is with the superintendent of schools. If not resolved with the superintendent, the third level is to take the grievance to the Board of Education. The decision of CT Page 5372 the principal, the superintendent and the board must be in writing setting forth the decision and the reasons for the decision.
If the matter is still not resolved, the teacher may request that the SEA Grievance Committee claim the matter for impartial arbitration pursuant to the rules of the American Arbitration Association.
The grievance was denied at levels one and two by the principal and the superintendent's office. However, the grievance was sustained by the Board of Education. On January 19, 1992, the Board voted that the position of Head Basketball Coach for the position at Westhill High School be vacated at the end of the current season; that the position be reposted and that a final decision be made by the Superintendent no later than June 1, 1992. (The defendant Board of Education has agreed to delay the process until there was a ruling from this court on the present motion). The evidence is not clear as to why the Board reached its decision but it appears that the principal did not have the claimed written evaluations for the candidate he recommended and was not forthcoming about the matter at the second level hearing. There is no evidence that the Board of Education had submitted to it or considered the plaintiff's claim that the appointing authority is limited in evaluation to those objective criteria set forth in paragraph 2 of the procedure or considered the plaintiff's claim that no weight, in any event, should be given to the CIAC allegations.
As indicated, the plaintiff, in this action, asserts that the principal and superintendent took into consideration matters outside the factors listed in paragraph 2 of the procedures and specifically considered and threatened to consider the impact of the CIAC investigation and subsequent probation for the Westhill High School teams. The plaintiff complains that such consideration is not only extraneous to the criteria to be considered under the appointment procedure agreement but is also a violation of the specific agreement between himself and the school system that: "[t]he administration of the Stamford public Schools agrees not to discipline coach Michael Saccardi for alleged recruiting and other alleged violation of CIAC rules, except as set forth [in the agreement]."
Although he had won his grievance at the third level, the plaintiff requested the teachers' union to bring the matter to the fourth level of grievance — arbitration. No action was taken by the union on that request.
The plaintiff's request for arbitration appears to have been based upon the alleged failure to restrict consideration to the objective criteria set forth in the appointment procedure agreement and to the claim that the superintendent breached the agreement CT Page 5373 with the plaintiff not to discipline him as a result of the alleged CIAC rules violations.
Now, the plaintiff seeks as relief the enjoining of the defendant Tucci from making any recommendations concerning the head coaching vacancy and the enjoining of the superintendent of schools from utilizing the alleged CIAC violations in making a determination for the head coaching position.
The plaintiff claims he has no adequate remedy at law because he cannot bring an action to compel his appointment, since it is possible that another person with greater experience might apply for the position and be entitled to it, and because he has no way at law to force the school administration to limit its considerations to the criteria set forth in the appointment procedures. Moreover, he claims that there is every indication that the principal and superintendent will breach the agreement not to discipline him for the alleged CIAC rules violations by using the alleged violations as a basis for denying him the appointment for which he would otherwise qualify under the appointment standards. The plaintiff claims that the gist of what he seeks is that he have "a level playing field" on which to compete with the other candidates.
The defendants claim that the requested motion for temporary injunction should be denied. They contest any claim that the appointing authority is limited to consideration only of the factors listed in paragraph 2 of the appointing procedure. They contest any claim that they cannot consider the CIAC allegations and the past discipline of the plaintiff because of the language of the agreement executed by the plaintiff and the superintendent's office.
However, as threshold issues, they claim that: (1) the court lacks subject matter jurisdiction because the plaintiff has grievance and arbitration remedies available to him under the collective bargaining agreement; and (2) the action is premature and not ripe for court review since no final decision on the coaching position has been made and until a final decision is reached that is adverse to the plaintiff, he has no standing before the court.
In support of their position, the defendants note that the Connecticut Supreme Court has declared, as a matter of state law, "parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court." School Administrators Ass'n v. Dow, 200 Conn. 376, 382-82,511 A.2d 1012 (1986). This rule reflects the settled principle that a plaintiff must exhaust any administrative remedy before a court may assume jurisdiction over a matter. Cummings v. Tripp, 204 Conn. 67,75, 527 A.2d 230 (1987); Kolenberg v. Board of Education, CT Page 5374206 Conn. 113, 123, 536 A.2d 577 (1988). The defendants claim that the plaintiff seeks to thwart legislative and contractual requirements and settled principles of law by "institut[ing] an independent action to litigate the very issue which the [grievance procedure] is designed to test," citing Butzgy v. Glastonbury,203 Conn. 109, 116, 523 A.2d 1258 (1987). The defendants assert that the plaintiff has a legally enforceable grievance procedure contained in the SEA contract. This procedure provides several levels of review and recourse to arbitration. The plaintiff has not exhausted this procedure.
The defendants base the claim that the issue is not ripe for court intervention on the fact that no appointment has been made since the Board has ordered the position be reposted. Until a final decision is made, plaintiff cannot assert either that he has been injured or that the procedure was flawed. As the defendants have noted, the Connecticut Supreme Court has held that a party is not entitled to injunctive relief, until what is sought has been either granted or denied and the action has become complete and final. Florentine v. Darien, 142 Conn. 415, 428, 115 A.2d 328 (1955). The defendants cite the United States Supreme Court's observation that the rationale for the ripeness doctrine
 is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.
Abbot Laboratories v. Gardner, 387 U.S. 136, 148,87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
The court agrees with the defendants that at this juncture the plaintiff has not exhausted his administrative remedies and that the issue is not yet ripe for judicial review.
The plaintiff does assert that he has exhausted all of his administrative remedies. He postulates that he had requested the union to pursue his grievance to arbitration after the Board had ruled on the third level following the earlier appointment of another teacher to the coaching position. The union took no action on this request. Since, under the bargaining agreement, the plaintiff has no personal right to force his grievance to arbitration, the grievance machinery has been exhausted in his case and he has a right to bring the issue to court.
As the defendants have noted, the plaintiff's argument on exhaustion misses the point. The response of the SEA to his request to bring the matter to level four arbitration is irrelevant CT Page 5375 because the plaintiff prevailed at level three. The plaintiff indicated in court that he had not sought or at least no longer seeks a mandamus to compel his hiring as a head coach. Thus, once the board sustained his grievance and ordered the administration to post and fill the position again, plaintiff's first grievance was favorably resolved and the union position on taking the issue to level four became moot.
As to the issue of ripeness, the plaintiff states he does not seek this court to compel his hiring as a head coach, but rather to enforce the terms of an agreement between himself and the Stamford Public School System as he understands that agreement Moreover, the plaintiff claims he probably could not raise the issue of the alleged breach of his private agreement with the Stamford School System concerning the CIAC charges through the regular grievance procedures, since that agreement does not fit within the scope of a procedure which addresses circumstances where there has been "a violation, misinterpretation or misapplication of this [collective bargaining] agreement or of the rules, regulations, administrative directives or policies of the board."
However, if that agreement should be read, as the plaintiff would have it read, to mean that the allegations of CIAC violations and the penalties agreed to by the plaintiff can not be considered as a factor in assessing his possible appointment to a coaching position, that would certainly have to be considered a policy of the board. The court agrees with the defendants that the plaintiff's argument on ripeness is premature. Until the plaintiff can establish he is aggrieved, he has no standing before the court. Beckish v. Manafort, 175 Conn. 415, 419, 399 A.2d 1274 (1978). Until a selection is made, no one can known whether or not the plaintiff is aggrieved or on what basis. The plaintiff may be selected for the position, or he may be satisfied that the person selected was chosen for reasons acceptable to the plaintiff. In these cases there will be no dispute. Alternatively, the plaintiff may be dissatisfied with the person selected or the factors that entered into the determination of the decision and may then claim to be aggrieved. Thus, until a selection is made, the very existence of a dispute is in doubt.
Because the court finds that the plaintiff's motion for a temporary injunction should be denied because he has not exhausted his administrative remedies and because this action is premature, it will not be necessary to address the issues of whether the plaintiff is correct or incorrect in his reading of the term "discipline" in the December, 1989, agreement between himself and the Stamford School System and is correct or incorrect in his claim that procedure for appointment of a head coach in effect in 1991 restricts consideration to the objective factors set forth in paragraph 2. CT Page 5376
The plaintiff's motion for a temporary injunction is DENIED because the plaintiff has not exhausted his administrative remedies and because this action is premature.