<hr />

DANIEL E. CUMMINGS ET AL. *v.*
MOREY W. TRIPP ET AL.
(12947)

PETERS, C. J., HEALEY, SHEA, DUPONT and McKEEVER, Js.

---

68

Argued February 5—decision released June 9, 1987

*Wesley W. Horton,* with whom were *Emmet L. Cosgrove, Kimberly Knox* and, on the brief, *William R. Moller,* for the appellants-appellees (defendants).

*Charles A. Sherwood,* for the appellees-appellants (plaintiffs).

ARTHUR H. HEALEY, J. The plaintiffs, Daniel E. Cummings et al., filed suit against the defendants, Morey W. Tripp et al., seeking injunctive relief and damages for an alleged violation of the East Lyme zoning regulations and an alleged common law private nuisance. The defendants counterclaimed for damages.[1] The case was referred to Allyn L. Brown, Jr., who heard the case as an attorney state trial referee. In addition to viewing the neighborhood and premises in question, he issued a report with extensive factual findings and conclusions.

The findings, which are not in dispute,[2] include the following: The plaintiffs are owners of residential property on River Road in East Lyme. The defendants own property at 23 River Road (Cozy Nest), consisting of a two-story dwelling (dwelling) and seven separate

---

[1] The defendants' counterclaim states the following:

"1. Prior to and since the time the defendants, Francis and Morey Tripp, purchased the property identified in paragraph 1 of the complaint, the property has been used for rental purposes and the property was purchased for those purposes.

"2. Each of the plaintiffs acquired their properties at a time subsequent to the establishment of the present uses of the defendants' property.

"3. The plaintiffs acquired their properties with full knowledge of the uses then and now made of the defendants' property.

"4. In the event that the court finds the present use of the defendants' property to be a nuisance and enjoins said use, the plaintiffs, in equity should compensate the defendants for damages from said order.

"Wherefore the defendants claim money damages."

[2] The plaintiffs and the defendants stipulated that they would not file a motion to correct the findings of the trial referee. See Practice Book § 438. The attorney trial referee made 159 findings of fact, 19 conclusions and 4 recommendations to the trial court.

residential rental units (cottages) which are located on a little more than one acre of land. The defendants rent out the dwelling and the cottages on a daily or weekly basis. The plaintiffs claim that this use of the premises violates the East Lyme zoning regulations and constitutes a nuisance.

In 1945, East Lyme first enacted a zoning ordinance and divided the town into residential, business and industrial districts.[3] At that time, the River Road neighborhood, including the Cozy Nest property, was classified as a residential district. This classification did not permit the rental of cabins or rooms except as an existing nonconforming use. In 1954, the town amended its zoning regulations, classifying the defendants' property as within an R-3 residential district. Under the 1954 regulations, the rental of cabins was a prohibited use in an R-3 residential district. The 1954 regulations provided that "no nonconforming use which has been abandoned for a period of one year shall thereafter be resumed." From 1967 to the present, the zoning regulations had provided that "no nonconforming use which has been abandoned or not used for a period of one year shall be thereafter resumed" and "a nonconforming use shall not be enlarged or extended."

Presently, River Road, including the Cozy Nest property, is located in an R-10 residential district which does not permit cabin rentals.[4] Since 1969, the renting of rooms has not been a permitted use in an R-10 residential district.

The rental of the cottages for summer use continued sporadically from 1945 until the defendants purchased the property in 1974.[5] The cottages were rented on a

---

[3] A business district was defined as "any lot in the zoned area of town now used for business purposes." East Lyme Zoning Regs. § 3 (1945).

[4] There was no finding as to when the property was classified as an R-10 residential district.

[5] The cottages on the defendants' property were built during the early 1900s. Prior to 1945, the cottages had been used for "commercial or busi-

weekly or monthly basis during the months of June, July and August. During that time, the dwelling was used as a single-family residence.

Since 1974, the defendants have spent more than $77,000 to improve the property. They have converted the dwelling from a single-family residence into five rental units and have insulated and modernized the cottages.[6] Both the dwelling and the cottages are now rented on a daily or weekly basis to transients as part of the defendants' motel business.[7]

ness purposes" during the months of June, July and August. In 1945, two of the cottages, although in need of repair, were rented during these months. In 1946, William Stuart purchased the property. During his ownership, he rented the cottages during the months of June, July and August. In 1949, Frank and Mary Francis purchased the property. There is no finding as to how the property was rented during the Francis' ownership. Frank Baier purchased the property in 1952. During his ownership, the cottages were rented during July and August and occasionally for two weeks in June. During the latter part of the Baier ownership, the cottages were not cleaned or painted, and structurally, the cottages were unfit for residence except during the summer months. In 1965, Baier died as a result of a fire in the main dwelling. In April, 1967, the estate of Frank Baier conveyed the property to George and Ruth Hutchings. From 1965 to the sale in 1967, the estate did not rent the cottages. George Hutchings fixed up the property. There are no findings as to the Hutchings' use of the property other than the fact that cottage number one was never rented, but was used only for storage. In 1974, the defendants purchased the property from the Hutchings. The trial referee found that there was no intention by any owner of the Cozy Nest property from 1945 to date to abandon the right to rent the seven cottages.

[6] At the time of the purchase by the defendants in 1974, the main dwelling was a single-family residence, with one bathroom and one kitchen. The defendants converted the dwelling into five separate rental units. The first floor of the dwelling is a three-room apartment with a kitchen, porch and bathroom. The second floor consists of four separate one-room apartments with a common kitchen and bathroom. An interior stairway at the rear of the dwelling leading to a single hallway provides the only access to the second floor. The defendants insulated the cottages and enclosed some of the porches. The cottages now have full interior bathrooms, hot and cold running water, full kitchens and gas heat.

[7] In 1976, the defendants purchased a motel known as the Blue Anchor Motel, which is located approximately one mile from the Cozy Nest property. The defendants operate the Cozy Nest as part of this motel business,

On May 22, 1975, Attorney Ronald G. Cummings wrote to Ernest Busch, the East Lyme zoning enforcement officer, complaining on behalf of his father, Daniel Cummings, of zoning violations on the defendants' property at 23 River Road. After inspecting the premises and reviewing town records, Busch determined that the defendants were not in violation of the zoning regulations and advised Cummings of his right to appeal that determination to the zoning board of appeals.[8] No appeal was filed by Cummings.

No other complaint to the zoning authorities was made by Daniel Cummings for more than six years. "During this period of time, the defendants continued to use [the] property and invest their time and funds in it relying upon the fact that there was no question as to their right to use this property as rental property."

On July 10, 1981, a large number of residents of the River Road community sent a petition to the first selectman of East Lyme, Richard Lougee, complaining of " 'numerous and flagrant zoning violations' occurring at the Cozy Nest and requesting that action be taken." Subsequent to sending the petition, representatives of the River Road community met with Lougee and Busch regarding the complaints in the petition. Busch "stated his conclusion that the defendants' use of the property did not violate the zoning regulations and he again advised the plaintiffs of their right to have his

make rentals through the office at the motel and use the same registration agreement as is used when renting rooms at the motel. "The business records of the Blue Anchor and the Cozy Nest are unitary, and are substantial for the period of 1979–1983."

[8] In a May 25, 1985 letter to Cummings, Busch stated: "My conclusion and interpretation of the zoning ordinances for East Lyme indicates no violations. Under section 16 of the ordinance, you have the right to appeal my determination to the Zoning Board of Appeals." Busch enclosed an application for such an appeal and indicated the address of the office where the application was to be filed.

decision reviewed by the Zoning Board of Appeals." No appeal was taken.

In June, 1982, the plaintiffs commenced an action seeking injunctive relief and damages from an alleged violation of the East Lyme zoning regulations and an alleged common law private nuisance. The defendants counterclaimed for damages. After an evidentiary hearing, the trial referee concluded, inter alia: (1) the use of the cottages in June, July and August is a valid nonconforming use, since that use existed prior to 1945 and has never been abandoned; (2) the winterization and other improvements of the cottages do not constitute an illegal extension of the original nonconforming use; (3) rental of the cottages on a daily rather than weekly basis is not an illegal extension of the original nonconforming use; (4) the use of the dwelling by other than a single family violates the zoning regulations and will, if continued, cause the plaintiffs irreparable damage and harm; (5) rental of the seven cottages other than in the months of June, July and August is an illegal extension of the original nonconforming use and will, if continued, cause the plaintiffs irreparable damage and harm; and (6) the use of the property made by the defendants is "not unreasonable nor a nuisance." The trial referee also concluded that the plaintiffs have suffered a total of $8000 in damages and that the plaintiffs were not required to exhaust their administrative remedies.

The trial referee recommended that the court (1) enjoin the defendants from renting the cottages at times other than the months of June, July and August, (2) enjoin the defendants from renting the dwelling other than to a single family, (3) award damages to each of the plaintiffs in specific amounts, and (4) render judgment for the plaintiffs on the defendants' counterclaim.

Both parties filed objections to certain conclusions and recommendations. On March 10, 1986, the trial court, *Hendel, J.,* set aside the conclusions and recommendations concerning damages and rendered judgment in accordance with the remainder of the report. On May 30, 1986, in response to the plaintiffs' motion for articulation, the court filed an articulation of its memorandum of decision. Both parties appealed from the judgment.

On appeal, the defendants claim that the trial court erred in concluding that: (1) the plaintiffs were not required to exhaust their administrative remedies; (2) the defendants' use of the dwelling is illegal; (3) the use of the cottages for year-round rental constitutes an illegal extension of a nonconforming use in violation of the zoning regulations; (4) the plaintiffs were not guilty of laches; and (5) the plaintiffs are entitled to injunctive relief.

On the cross appeal, the plaintiffs claim that the court erred in concluding that: (1) a nonconforming use exists as to the cottages; (2) daily rental of the cottages is not an illegal extension of any existing nonconforming use; and (3) the plaintiffs were not entitled to damages.

I

The defendants' first claim is that the trial court erred in concluding that the plaintiffs were not required to exhaust their administrative remedies. We disagree.

Before trial, the defendants filed a motion for summary judgment claiming that the plaintiffs failed to exhaust their administrative remedies. The court, *Mack, J.,* characterized the motion as "in effect a motion to dismiss for lack of subject matter jurisdiction" and framed the issue as "whether the court lacks subject matter jurisdiction because of the plaintiffs' failure to exhaust administrative remedies." The court cor-

rectly analyzed the issue by considering the allegations of the complaint in a light most favorable to the plaintiffs. See *Brewster* v. *Brewster,* 152 Conn. 228, 233, 206 A.2d 106 (1964). In denying the motion, the court relied upon *Reynolds* v. *Soffer,* 183 Conn. 67, 71, 438 A.2d 1163 (1981), holding that the failure to appeal the inaction of the building inspector in enforcing the town zoning regulations to the zoning board of appeals did not preclude the defendants from bringing an action for injunctive relief against such violations.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 282, 362 A.2d 1354 (1975); see 3 Davis, Administrative Law § 20.01; General Statutes §§ 4-175, 4-183." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979). Despite this principle, in *Reynolds* we held that " '[a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies]. *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 180, 377 A.2d 280 [1977]; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 A. 483 [1927]; see also, 3 Rathkopf, The Law of Zoning and Planning (4th Ed.) c. 66.' " *Reynolds* v. *Soffer,* supra, 69, quoting *Karls* v. *Alexandra Realty Corporation,* 179 Conn. 390, 401, 426 A.2d 784 (1980); see *Brainard* v. *West Hartford,* 140 Conn. 631, 636, 103 A.2d 135 (1954).

Applying these principles, we must determine whether the plaintiffs were required to exhaust an administrative remedy before the trial court could

entertain this action. *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* supra. In their complaint, the plaintiffs clearly allege that they will be "specifically and materially damaged by a violation of the zoning ordinances which has occurred . . . on another's land. . . . " See *Reynolds* v. *Soffer,* supra.[9] We note that the plaintiffs' assertion is more than a conclusory allegation of nuisance. See *Butzgy* v. *Glastonbury,* 203 Conn. 109, 523 A.2d 1258 (1987). In addition, the trial referee specifically concluded that the defendants' use of the property has caused, and if not enjoined will continue to cause, the plaintiffs irreparable damage and harm. The trial referee also concluded that the defendants' use of the property has caused the plaintiffs much annoyance, personal inconvenience and irritation. The court, therefore, was correct in concluding that the plaintiffs were not required to exhaust their administrative remedies before bringing this action in the trial court. The trial court had subject matter jurisdiction to hear this case. We cannot state too strongly, however, the necessity for clear and precise allegations of specific and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine.

We note that, in arguing that the plaintiffs have not exhausted their administrative remedies, the defendants recognize the applicability of *Reynolds* v. *Soffer,* supra. In doing so, they argue in their brief that *Reynolds* should be overruled and failing that, that it is validly distinguishable.

We do not agree that *Reynolds* should be overruled nor do we agree that it can be legitimately distinguished. A court should not overrule its earlier deci-

---

[9] Paragraph 9 of the complaint provides in part: "The continued illegal use, utilization and conversion of said property, by the Defendants, will cause the Plaintiffs irreparable and grievous injury, damage and harm . . . ."

sions "unless the most cogent reasons and inescapable logic require it." *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955); see *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 570, 409 A.2d 1020 (1979). We recognize that "[e]xperience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better . . . . The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. A court, when once convinced that it is in error, is not compelled to follow precedent. *Smith* v. *Allwright,* 321 U.S. 649, 665, 64 S. Ct. 757, 88 L. Ed. 987 [1944]." *Herald Publishing Co.* v. *Bill,* supra. We do not overrule *Reynolds.*

In arguing that we should overrule *Reynolds,* the defendants refer to certain cases cited in *Reynolds* and suggest that the only case supporting "the broad language of *Reynolds* is *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 A. 483 (1927)," which they argue "was decided before the widespread use of administrative agencies." They claim that our citation of *Karls* v. *Alexandra Realty Corporation,* supra, is somehow off the mark, apparently because *Karls* does not mention the exhaustion doctrine. While we recognize that *Karls* does not mention that doctrine, the principle quoted by *Reynolds* from *Karls* articulating the exception was then and is now sound. The citation of *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 180, 377 A.2d 280 (1977), is also questioned by the defendants. *Blum,* while different factually, involved a plaintiff who was seeking to attack the actions of the defendant landowners for impermissibly using their premises without first resorting to an administrative remedy. In *Blum,* the claimed zoning violation concerned "the existence of a nonconforming use concerning which the zoning board [had] refused to take any official action." Id. The *Blum* court stated: "If the plain-

tiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief." Id. We note that *Blum* cites not only *Fitzgerald* but also *Schomer* v. *Schilepsky,* 169 Conn. 186, 194, 363 A.2d 128 (1975), which also supports our decision in *Reynolds.* In *Schomer,* the defendants claimed error in the trial court's decision to grant injunctive relief. The *Schomer* court stated: "Though the primary responsibility for enforcing zoning regulations rests with the zoning commission, where a violation results in special damage to an individual, the injured party has a right to seek injunctive relief."Id., citing *Fitzgerald* v. *Merard Holding Co.,* supra. Additionally, in *Bianco* v. *Darien,* 157 Conn. 548, 553–54, 254 A.2d 898 (1969), a case also cited in *Reynolds,* we quoted the following from *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963): "We have frequently held that when a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." In *Bianco* v. *Darien,* supra, 554, however, we refused to apply that principle stating: "The relief sought and the issues raised are distinctly equitable in nature. To hold that the plaintiffs had an adequate remedy at law which required that they exhaust their administrative remedies before the zoning board of appeals is to ignore the claims made and the nature of the action." These cases show that *Reynolds* was soundly based on our prior decisions.

Despite the defendants' argument to the contrary, our conclusion that the plaintiffs were not required to exhaust their administrative remedies before seeking judicial action is not inconsistent with the way courts have applied the exhaustion doctrine and the policy behind that doctrine. As the United States Supreme Court has recognized, the "[a]pplication of the [exhaus-

tion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved" and that the doctrine should not be "applied blindly in every case." *McKart* v. *United States*, 395 U.S. 185, 193, 200–201, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969). It has also been said that "[e]xhaustion law is too complex for a meaningful simple statement of when exhaustion is required and when it is not, but clearly the courts generally do what they obviously should do—they weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable." 4 K. Davis, Administrative Law (2d Ed. 1983) § 26.1.

In *McKart* v. *United States*, supra, 193–94, the United States Supreme Court summarized some of the purposes of the exhaustion doctrine. Although some of these considerations are equally applicable to the facts of this case, we nevertheless recognize that certain very practical notions of judicial efficiency come into play as well. See id. At common law, property owners have the right to seek an injunction as well as damages for a nuisance affecting the enjoyment of their property. This right is supplementary to the right to seek injunctive relief from the zoning authorities for the violation of a zoning ordinance. See *Brainard* v. *West Hartford*, supra, 635–36. In deciding whether a nuisance exists, a court will often find it necessary to interpret the pertinent zoning regulations because the nuisance issue is intertwined with the lawfulness of the conduct involved. From a judicial viewpoint, it would be both inefficient and time consuming to require a litigant, as a prerequisite to judicial consideration of the nuisance claim, to exhaust his or her administrative remedies by first obtaining a ruling from the zoning board of appeals as to the lawfulness of the defendant's conduct. A fortiori, it would be inefficient and inequitable for a court, based on an ultimate finding of the

absence of a nuisance, to dismiss the case for failure to exhaust administrative remedies when that court had already found that a zoning violation had been established and that that violation had caused the plaintiff special harm. We think it appropriate in such a situation for the court to give the relief, based on the zoning violation, which the plaintiff has requested.

In this case, it was uncertain at the outset whether the plaintiffs would prevail on the alleged nuisance. The fact that the referee ultimately concluded that the plaintiffs did not establish that claim is not determinative of the exhaustion issue because in this case the referee, in order to decide the nuisance claim, had to consider the lawfulness of the defendants' conduct and thus decide the issue of whether the East Lyme zoning ordinances had been violated. Only in retrospect do we now know that an administrative order that the defendants' use of the property is in violation of the zoning ordinances would have provided adequate relief; that is, the same relief that the plaintiffs in this case received from the trial court. The trial court in this case was unable to make that determination at the outset. The trial court's consideration of the plaintiffs' claims was appropriate.

Moreover, if the plaintiffs had proved their right to recover ascertainable money damages, the administrative remedy would not have been adequate because administrative relief cannot encompass a monetary award. When administrative relief is inadequate, we do not require a party to exhaust administrative remedies. Although in this case we conclude that the plaintiffs are not entitled to an award of damages, there was no way for the trial court to have known that at the time this action was instituted. In deciding the issue of damages, like the nuisance issue, the court necessarily had to interpret the applicable zoning ordinances. The ultimate conclusion of the trial court that the plain-

tiffs are not entitled to damages does not change the finding that the defendants' conduct is in violation of the zoning ordinances. In this situation, it was appropriate for the trial court to have given the relief requested based on the zoning violation; it was not necessary for the trial court to, at that point, dismiss the case for failure to exhaust administrative remedies. The trial court did not err in concluding that the plaintiffs were not required to exhaust their administrative remedies before seeking judicial action.

Although the general rule is that if an adequate administrative remedy exists, it must be exhausted, "[l]ike any other general rule, the rule of exhaustion of administrative remedies is subject to some exceptions, although we have recognized such exceptions only infrequently and only for narrowly defined purposes." *LaCroix* v. *Board of Education,* 199 Conn. 70, 79, 505 A.2d 1233 (1986). *Reynolds* is such an exception. We are thus aware that "[l]egal principles ought not to be applied in a mechanistic manner." *Droeger* v. *Welch Sporting Goods Corporation,* 541 F.2d 790, 792 (9th Cir. 1976). *Reynolds* was correctly decided and is not validly distinguishable[10] in this case.

## II

The defendants' second claim of error is that the trial court erred in concluding that the dwelling is limited to use by a single family under the East Lyme zoning regulations. Specifically, the defendants argue that this conclusion is not supported by the findings. We disagree.

The trial referee concluded that the dwelling is limited to use by a single family under the East Lyme zoning regulations and that the defendants are illegally

---

[10] The conclusory attempt of the defendants in their brief to distinguish *Reynolds* v. *Soffer,* 183 Conn. 67, 438 A.2d 1163 (1981), is unpersuasive.

using the dwelling as a "boarding house" or a "multiple residence dwelling." The trial referee also concluded that this illegal use has caused and, if maintained, will continue to cause the plaintiffs irreparable damage and harm.

The findings of fact made by the trial referee support this conclusion. The findings establish that the Cozy Nest property is presently located in an R-10 residential district and that since 1969, the renting of rooms has not been a permitted use in an R-10 district. The findings also establish that the defendants were not using the dwelling as a single-family unit but were instead renting the rooms "as part of their motel business."[11] Consequently, the trial referee concluded that the defendants' rental of the five rental units in the dwelling house is not permitted.[12]

There was no finding by the trial referee that a valid nonconforming use existed as to the dwelling house. As the party claiming the benefit of a nonconforming use, the defendants bore the burden of proving a valid

[11] When the defendant purchased the property in 1974, the dwelling was a single-family residence having only one bathroom and one kitchen. The defendants converted the dwelling into five separate rental units which included a single apartment on the first floor and four separate rental rooms on the second floor. Each rental room on the second floor has its own door lock and is connected to a common hallway and stairwell. The hallway on the first floor is equipped with two public telephones. The trial referee found that the defendant operated the rentals as part of their motel business. The previous owners did not rent rooms in the dwelling. The previous owners used the dwelling as a single-family residence.

[12] In support of their argument, the defendants state that "the only relevant finding is that an R-10 residence zone prohibits the 'renting of rooms.' " The defendants point out that "there is no finding as to what that phrase means, nor [does] any regulation mentioned [refer] to a 'boarding house' or a 'multiple residence dwelling.' " Regardless of this fact, we conclude that the findings as stated logically support the conclusion of the trial referee. We note that the defendants have waived the right to file a motion to correct. Practice Book § 438; see *Blessings Corporation* v. *Carolton Chronic & Convalescent Hospital, Inc.*, 7 Conn. App. 364, 366–67, 508 A.2d 829 (1986).

nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations. *Friedson* v. *Westport,* 181 Conn. 230, 234–35, 435 A.2d 17 (1980). Despite the defendants' assertions to the contrary, the factual findings support the conclusion that the defendants' use of the dwelling is in violation of the East Lyme zoning regulations.

### III

The defendants' third claim of error is that the trial court erred in concluding that by using the cottages on the property for year-round rentals, the defendants have enlarged their nonconforming use in violation of the East Lyme zoning regulations.[13]

It is undisputed that the zoning regulations of the town of East Lyme prohibit the rental of cottages in a residential district except for an existing nonconforming use, that the property is currently located in an R-10 residential district, and that the use of the cottages for rental purposes during the months of June, July and August is recognized as a preexisting nonconforming use by the East Lyme zoning authorities. The issue, therefore, is whether the trial court erred in concluding that by renting the cottages year-round, the defendants have enlarged their nonconforming use in violation of the East Lyme zoning regulations.

It is undisputed that prior to 1945, the cottages had been rented only during the months of June, July and August. The zoning regulations in effect since 1967 to the present provide that "a nonconforming use shall not be enlarged or extended." "We have previously held that a mere increase in the amount of business

---

[13] The trial referee concluded that "[r]ental of the seven cottages other than in the months of June, July and August is an illegal extension of the original non-conforming use and has and will if continued cause the plaintiffs irreparable damage and harm."

done pursuant to a nonconforming use is not an illegal expansion of the original use. *Guilford* v. *Landon,* [146 Conn. 178, 183, 148 A.2d 551 (1959)]; *Salerni* v. *Scheuy,* 140 Conn. 566, 571, 102 A.2d 528 (1954); *DeFelice* v. *Zoning Board of Appeals,* [130 Conn. 156, 162, 32 A.2d 635 (1943)]. A change in the character of a use, however, does constitute an unlawful extension of the prior use. *Salerni* v. *Scheuy,* supra." *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 716, 519 A.2d 49 (1986). "The legality of an extension of a nonconforming use is essentially a question of fact." Id.

In *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 290 A.2d 350 (1971), this court held that the year-round use of a cabin that had previously been used only during the summer months constituted an unlawful extension of a nonconforming use. We stated in *Weyls* that "[a]n increase in the use of property from the summer months to a year-round use is clearly a type of enlargement intended to be proscribed by the . . . zoning regulations. It is an extension that calls for the application of the principle that ' "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. . . . " *Salerni* v. *Scheuy,* [supra, 570]; *Stern* v. *Zoning Board of Appeals,* 140 Conn. 241, 244, 99 A.2d 130 [1953].' *Beerwort* v. *Zoning Board of Appeals,* [144 Conn. 731, 734, 137 A.2d 756 (1958)]." *Weyls* v. *Zoning Board of Appeals,* supra, 520. The defendants' claim here suggests their invocation of the rationale of "the rule that the employment of improved and more efficient instrumentalities in the pursuit of the original use is not an unlawful expansion of that use." *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 443, 190 A.2d 594 (1963). This rule, however, "is subject to the requirement that the new method be one that is ordinarily and reasonably adapted to make the original use available to the owner and that

the original nature and purpose of the undertaking remain unchanged." Id. Any such posture is unsupported by the facts found; to the earlier "business," the defendants have literally and figuratively added a new business undertaking—a year-round business. This is not a negligible or cosmetic change but rather a substantial departure from the original nature and purpose of the legal nonconforming use which the defendants possess. Fairly viewed, on the facts found, this change can be said to exceed the tolerance that is to be accorded nonconforming uses.

We stated in *Weyls* that " '[t]o be illegal, an extension of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of the year.' " *Weyls* v. *Zoning Board of Appeals*, supra, quoting *Hackett* v. *Roosevelt School, Inc.*, 145 Conn. 119, 123, 139 A.2d 608 (1958). Although the zoning ordinance in *Weyls* is slightly different from that in this case,[14] we hold that the differences between them are insignificant for present purposes and that the decision in *Weyls* v. *Zoning Board of Appeals,* supra, is controlling in this case.[15]

[14] In *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 517–18, 290 A.2d 350 (1971), the applicable zoning regulation provided: " 'B. No nonconforming use shall be enlarged or increased or changed to a nonconforming use which contravenes to a greater extent these regulations or the purposes of zoning as set forth in Chapter 124 of the General Statutes.' General Statutes § 8-2 authorizes the enactment of zoning regulations and the manner of their adoption by a zoning commission and states, in part, that '[s]uch regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations.' "

[15] In support of their argument, the defendants cite the out-of-state cases of *Frost* v. *Lucey,* 231 A.2d 441 (Me. 1967), and *McAleer* v. *Board of Appeals,* 361 Mass. 317, 280 N.E.2d 166 (1972). In these cases, the respective courts reached conclusions contrary to our decision in *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 209 A.2d 350 (1971). We deem *Weyls* to be controlling in this case, and under the facts of this case, we will not reconsider that decision.

In *Frost* v. *Lucey,* supra, the Supreme Judicial Court of Maine reversed

The trial court correctly concluded that the defendants' year-round rental of the cottages constituted an illegal extension of a nonconforming use.[16]

## IV

The defendants' fourth claim of error is that the trial court erred in concluding that the plaintiffs were not guilty of laches. The defendants argue that this conclusion is contrary to the facts found by the trial referee. Specifically, the defendants maintain that the following facts support a finding of laches: (1) the

---

the trial court's enjoining of a hotel owner's claimed expansion of a nonconforming use. In *Frost,* the appellate court held that the *"mere* prolongation of the operation of the hotel with incidental dining room service . . . from a period of four months in the summer to a year-round activity [was] not within the prohibitory language of the South Portland zoning ordinance when under such ordinance a nonconforming use may be changed to one clearly having the same character. It is not such an extension or enlargement as the ordinance intended to prevent." (Emphasis added.) Id., 449. In reversing the lower court, which had "relied on *Beerwort* v. *Zoning Board of Appeals of the Town of Coventry,* 144 Conn. 731, 137 A.2d 756 [1958]," the Supreme Judicial Court also stated, inter alia, that in recent years the area surrounding the defendant's summer hotel had "changed from summer cottages to year-round residences . . . [m]ost area owners have winterized as the defendant has done with the hotel. . . . [The defendant] merely has followed the trend . . . [that] there is no credible evidence that the year-round operation of the hotel without dining room service for large groups of transients in and of itself would have a greater adverse and depressant effect upon the value of residential property in the vicinity than already existed by reason of the nonconforming summer hotel operation." *Frost* v. *Lucey,* supra. *Frost* cannot avail the defendants if for no other reason than the Supreme Judicial Court of Maine rejected the trial court's reliance on *Beerwort.* Id. In our case, the defendants have hardly "merely . . . followed the trend" in the neighborhood.

In *McAleer,* the Supreme Judicial Court of Massachusetts, in finding no illegal expansion of the nonconforming use involved, said that it read the local zoning bylaw "as containing an intent that may differ from the intended spirit expressed [against the expansion of nonconforming uses] in bylaws of other municipalities." *McAleer* v. *Board of Appeals,* supra, 323. In so doing, *McAleer* noted that our decision in *Beerwort* was to the contrary. Id., 324.

[16] The defendants cite two lower court decisions, *Catalano* v. *Zoning Board of Appeals,* 4 Conn. Law. Trib., No. 16, p. 16 (Court of Common Pleas,

defendants purchased the property in 1974 and have expended over $77,000 on improvements since then; (2) in the six year period between the 1975 and 1981 complaints, "the defendants continued to use their property and invest their time and funds in it relying upon the fact that there was no question as to their right to use this property as rental property"; and (3) the lawsuit was brought eleven months after the 1981 complaint to the zoning officials.

As noted previously, a "trial court's conclusions are to be tested by the finding; they must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 280, 362 A.2d 1354

Middlesex County, Docket No. 0073989) (1978), and *Flanders* v. *Zoning Board of Appeals,* 8 Conn. Law. Trib., No. 4, p. 19 (Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 8000 750S) (1982), to support their argument that the change from seasonal to year-round rental is not a violation of the East Lyme zoning regulations. In *Catalano,* the court distinguished *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 518, 209 A.2d 350 (1971), and *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 137 A.2d 756 (1958), on the basis that the zoning ordinance in *Catalano* was different from that of *Weyls* and *Beerwort.* In *Flanders,* the court followed the reasoning of *Catalano.* We refuse to make such a distinction between this case and *Weyls* and *Beerwort.*

The defendants also argue that because the East Lyme zoning regulations do not make a distinction between seasonal and year-round use, there is no basis for reading the East Lyme zoning regulations to prohibit year-round use of seasonal dwellings. We disagree that such a provision in the zoning regulations is a prerequisite to a judicial finding that a change from seasonal to nonseasonal use is an extension of a nonconforming use. See *Weyls* v. *Zoning Board of Appeals,* supra. The East Lyme zoning regulations provide that "a non-conforming use shall not be enlarged or extended." In *Weyls,* we expressly stated that " '[t]o be illegal, an *extension* of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of the year.' " (Emphasis added.) Id., 520. The fact that the zoning regulations do not differentiate between seasonal and year-round use, therefore, is, under the circumstances of this case, irrelevant. We note also that in *Weyls* there was no finding that the applicable zoning regulations differentiated between seasonal and year-round use.

(1975). " 'Laches consists of an inexcusable delay which prejudices the defendant.' *Danaher* v. *C. N. Flagg & Co.,* 181 Conn. 101, 107, 434 A.2d 944 (1980)." *Friedlander* v. *Friedlander,* 191 Conn. 81, 85, 463 A.2d 587 (1983); see also *Berin* v. *Olson,* 183 Conn. 337, 344, 439 A.2d 357 (1981); *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 292, 438 A.2d 62 (1980), and cases cited therein. We have said on other occasions that "[t]he defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit." *Schomer* v. *Shilepsky,* 169 Conn. 186, 194, 363 A.2d 128 (1975); *Robinson* v. *Myers,* 156 Conn. 510, 519, 244 A.2d 385 (1968). "Delay alone is not sufficient to bar a right"; the delay in bringing suit must be "unduly" prejudicial. *Owens* v. *Doyle,* 152 Conn. 199, 207, 205 A.2d 495 (1964); *Robinson* v. *Myers,* supra. "A conclusion that a plaintiff has [not] been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. *Bozzi* v. *Bozzi,* [177 Conn. 232, 240, 413 A.2d 834 (1979)]." *Papcun* v. *Papcun,* 181 Conn. 618, 621, 436 A.2d 282 (1980); see also *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377 (1978), quoting *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906 (1955). The burden is on the party alleging laches to establish that defense.

Preliminarily, we note that the complaint in this case was filed on July 27, 1982, and that in determining whether there has been any delay on behalf of the plaintiffs, the findings reveal that in 1975 only the named plaintiff Daniel Cummings owned property in the River Road neighborhood. Two of the remaining plaintiffs purchased their property in 1977, one purchased property in 1979 and there is no finding as to when the fifth plaintiff purchased his property. We also note that the 1975 letter to the East Lyme zoning enforcement offi-

cer was written on behalf of Cummings only; there is no finding that the 1975 complaint was on behalf of any other plaintiff. Therefore, it is unclear as to the time from which the *plaintiffs* may be charged with "delay."

In this case, the trial referee concluded that the plaintiffs were not guilty of laches. In reaching this conclusion, the referee found none of the elements necessary to a finding of laches. To the contrary, the referee concluded that the defendants had not established an unreasonable delay by the plaintiffs or damages resulting from any delay. Although the referee found that the defendant spent over $77,000 on renovations, the referee also found that during the period 1978 through 1983, the gross receipts for the Cozy Nest were $261,019. See *Arundel Supply Corporation* v. *Cason,* 265 Md. 371, 375–77, 289 A.2d 585 (1972). Additionally, the finding that in the time period between 1975 and 1981 the defendants continued to use their property and invest their time and funds in it, believing that there was no question as to their right to use this property as rental property, is not necessarily inconsistent with the conclusion of no laches. "The principal element in applying the doctrine of laches is the resulting prejudice to a defendant, rather than the delay itself." 3 A. & D. Rathkopf, Law of Zoning and Planning § 45.06, p. 45-73. As stated previously, " '[d]elay alone is not sufficient to bar a right'; the delay must be 'unduly' prejudicial." We cannot say that the trial court erred in concluding that the plaintiffs were not guilty of laches.[17]

---

[17] We note here that because the parties stipulated to the facts as found by the trial referee in reviewing these claims, we are bound by the facts as found and therefore cannot look beyond the findings. See *Christ-Janer* v. *A.F. Conte & Co.,* 8 Conn. App. 83, 89 n.3, 511 A.2d 1017 (1986); *Blessings Corporation* v. *Carolton Chronic & Convalescent Hospital, Inc.,* 7 Conn. App. 364, 366, 508 A.2d 829 (1986).

## V

The defendants' fifth claim of error is that the trial court erred in awarding injunctive relief to the plaintiffs. " 'The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier.' " *Nair* v. *Thaw,* 156 Conn. 445, 452, 242 A.2d 757 (1968); *Karls* v. *Alexandra Realty Corporation,* supra; *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 356, 365 A.2d 1093 (1976). " '[W]hether damages are to be viewed by a court of equity as "irreparable" or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary loss suffered. . . .' " *Berin* v. *Olson,* supra, 341, quoting *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* 128 Conn. 596, 604–605, 24 A.2d 841 (1942). We note also that where a violation of a zoning regulation results in special damage to an individual, the injured party has a right to seek injunctive relief. *Schomer* v. *Shilepsky,* supra, 194.

The trial referee specifically concluded that the use of the dwelling other than as a single-family residence and the "[r]ental of the seven cottages other than in the months of June, July and August . . . has [caused] and will if continued cause the plaintiffs irreparable damage and harm." Although the trial referee also concluded that there was no credible evidence as to diminution of value of the plaintiffs' property as a result of the defendants' use of the property, the referee did conclude that the defendants' use of the property has caused the plaintiffs much annoyance, personal inconvenience and irritation. Additionally, the trial referee made numerous specific findings of noise and disturbance to the plaintiffs. The referee found that the traffic and noise resulting from the defendants' use of the Cozy Nest property was "substantial" and that prospective tenants looking for the Cozy Nest at vari-

ous times of the day and night have requested directions and have caused inconvenience and disturbance to some of the plaintiffs. The operation of motor vehicles by tenants of the Cozy Nest has caused "concern and discomfort to the plaintiffs." On occasion, some of the plaintiffs have been awakened during the night by guests of the Cozy Nest. In light of these findings, we cannot say that the court abused its discretion in granting the injunctions.[18]

## VI

On the cross appeal, the plaintiffs claim that the court erred in concluding that a nonconforming use existed as to the use of the seven cottages during June, July and August. Specifically, the plaintiffs argue that: (1) the defendants did not prove the existence of a use at the time of the enactment of zoning; (2) the subordinate facts do not establish that any such use was continuous; and (3) the subordinate facts establish that any existing use was abandoned by the owners of the property.[19] We disagree.

## A

"For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be *lawful* and second, it must be *in existence* at the time that the zoning regulation making the use nonconform-

[18] As the plaintiffs have pointed out in their brief, the terminology utilized by the trial referee is accepted terminology relative to the granting of injunctive relief. See, e.g., *Nair* v. *Thaw,* 156 Conn. 445, 451, 242 A.2d 757 (1968) ("annoying and irritating"); *Nailor* v. *Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 A. 548 (1933) ("inconvenience, discomfort and damage") ; W. Prosser, Torts (4th Ed.) § 90 ("personal discomfort or inconveniences"); 22 Am. Jur. 2d, Damages § 132 ("discomfort, annoyance, inconvenience").

[19] The requirement of continuity is not a requirement independent of the requirement that the nonconforming use cannot have been abandoned. See *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 180–81, 377 A.2d 280 (1977). We, therefore, will not treat claims (2) and (3) separately.

ing was enacted." (Emphasis in original.) *Helicopter Associates, Inc.* v. *Stamford,* supra, 712. We have stated that " 'to be an *existing use,* premises must be so utilized as to be *known in the neighborhood* as employed for a given purpose.' " (Emphasis added.) Id., 713.

The trial referee found, inter alia, the following: Zoning was first enacted in East Lyme in 1945 and the subject property was placed in a residential zone which did not permit the rental of cottages. "The cottages on the property . . . were built sometime during the 1900's and in and prior to 1945 were used for commercial or business purposes during the months of June, July and August."

The plaintiffs argue that the trial court erred in finding that in 1945 the use of the property consisted of a nonconforming use. Specifically, the plaintiffs maintain that the subordinate facts do not support the conclusion that the use was "existing" as of 1945.

The referee's conclusion that a nonconforming use existed as of 1945 is logically based on the findings. The findings make clear that zoning was enacted in 1945, that prior to 1945 the premises had been used for commercial purposes and that in 1945 at least four of the cottages had been rented. Although the subordinate facts could have been more detailed, they are adequate to support the conclusion. Moreover, the plaintiffs could have sought an articulation of those findings by filing a motion to correct. Practice Book § 438. The plaintiffs expressly waived the right to file such a motion. The trial court correctly concluded that the rental of the cottages during the months of June, July and August was an existing use in 1945.

B

The trial referee concluded that the nonconforming use "has never been abandoned or terminated by any

owner subsequent to the adoption of East Lyme zoning." The plaintiffs argue that the court erred in adopting this conclusion in that the "subordinate facts do not establish a continuous, substantial and obvious nonconforming use." The plaintiffs maintain that "the only conclusion that can be properly drawn from the subordinate facts [is that] the use was abandoned and forfeited."

The zoning regulations in effect from 1954 to 1967 provided that "no nonconforming use which has been abandoned for a period of one year shall be thereafter resumed." In 1967, this regulation was changed and the corresponding regulation in effect from 1967 to the present provides that "no nonconforming use which has been abandoned *or not used* for a period of one year shall be thereafter resumed." (Emphasis added.)

"Abandonment" is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. *Blum* v. *Lisbon Leasing Corporation,* supra, 181–82. The mere discontinuance of a use where there is no intent to abandon is not enough. *Friedson* v. *Westport,* supra, 234. To establish abandonment, the "intention on the part of the owner [must be] to relinquish *permanently* the nonconforming use." (Emphasis added.) *Blum* v. *Lisbon Leasing Corporation,* supra. Because the conclusion as to the intention of the landowner is an inference of fact, it " ' "is not reviewable unless it was one which the trier could not reasonably make." ' " Id., 182.

The trial referee found that "[t]here was no intention by any owner of the Cozy Nest property from 1945 to date to abandon the right to rent the seven cottages." The plaintiffs argue that this finding is conclusory and inconsistent with the finding that from May 13, 1965, to April 25, 1967, the cottages had not

been rented. We point out first that the plaintiffs, after failing to file a motion to correct; Practice Book § 438; cannot avail themselves of an allegation that the referee's finding is conclusory. In addition, the finding that the premises were not rented from 1965 to 1967 is not inconsistent with the finding of no abandonment because the trial referee also found that the reason the premises had not been rented was because the owner died in a fire on the premises in 1965 and the estate did not repair or convey the property until April, 1967. The subordinate facts are sufficient to support the finding of no abandonment.

The plaintiffs also argue that the period of nonuse from May, 1965, to April, 1967, terminates the nonconforming use even without a finding of an intent to abandon. In making this argument, the plaintiffs point to the regulations in effect from 1967 to the present which provide that "no nonconforming use which has been abandoned *or not used* for a period of one year shall thereafter be resumed." (Emphasis added.) While acknowledging that abandonment requires intent, the plaintiffs argue that under the 1967 regulations nonuse for one year is enough to terminate the nonconforming use, regardless of the owner's intent.

Under the circumstances of this case, we need not decide whether the "or not used" language of the 1967 regulations sets up a standard different from the test required for abandonment, or whether such a regulation would be valid. See *Magnano* v. *Zoning Board of Appeals,* 188 Conn. 225, 227 n.2, 449 A.2d 148 (1982). Even if we assume, arguendo, that the "or not used" language added in 1967 allows a termination of a nonconforming use without a finding of an intent to abandon, the 1967 amendment cannot be retroactively applied to the "nonuse" which had occurred prior to the effective date of that amendment. There is no finding that, from 1967 to the present, there has been a

period of nonuse for one year. The trial court was correct in concluding that the nonconforming use had not been abandoned.[20]

## VII

The plaintiffs also claim that the court erred in concluding that nightly "motel style" rental of the cottages is not an illegal extension of the existing nonconforming use. Specifically, the plaintiffs argue that "to the extent there was any rental of the [cottages] at all prior to the defendants' ownership, the [cottages] were rented not on a daily basis but only on a weekly basis. The plaintiffs maintain that this change from weekly to overnight rentals is "a change in the nature, character, and kind of use and is, therefore, an illegal extension of the original nonconforming use." We disagree.

We note at the outset that the plaintiffs bore the burden of establishing that the defendants' activities amounted to an illegal extension of a nonconforming use. As we have recently stated in *Helicopter Associates, Inc.* v. *Stamford,* supra, 716, "[t]he legality of an extension of a nonconforming use is essentially a question of fact." We cannot say that the trial referee's conclusion that the plaintiffs had not established that the defendants' activities amounted to an illegal extension of a nonconforming use was "clearly erroneous." See Practice Book § 4061; *Helicopter Associates, Inc.* v. *Stamford,* supra.

---

[20] The plaintiffs in their brief refer parenthetically to the fact that there is no finding as to any use from the period of 1967 through 1974. By inference, the findings that the owner, George Hutchings, worked to fix up the property and that he never rented cabin No. 1, but used it only for storage are sufficient to show a continuous use during that period, at least in the absence of a motion to correct or an exception. See Practice Book §§ 438, 439. We note also that there is no finding that Hutchings intended to abandon the nonconforming use. No claim of nonuse is made for the period since 1974.

As previously noted, "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use. *Guilford* v. *Landon,* [146 Conn. 178, 183, 148 A.2d 551 (1959)]; *Salerni* v. *Scheuy,* 140 Conn. 566, 571, 102 A.2d 528 (1954); *DeFelice* v. *Zoning Board of Appeals,* [130 Conn. 156, 162, 32 A.2d 635 (1943)]." *Helicopter Associates, Inc.* v. *Stamford,* supra; see also 101 C.J.S., Zoning § 193, p. 955. In this case the change from weekly rentals to daily rentals amounted, inter alia, to an increase in the number of tenants using the cottages. This increase in the number of tenants is an increase in "intensity" or "degree" of the original use and is not a change in the nature or character of the use. See *State* v. *Wagner,* 81 N.J. Super. 206, 195 A.2d 224 (1963). The court's conclusion that the activities of the defendants did not amount to an illegal extension of a nonconforming use was not clearly erroneous.

In support of their position, the plaintiffs point to, inter alia, the findings of noise and increased traffic which have resulted from the defendants' use of the property. They argue that daily rentals "obviously" increase that burden such that the change in use amounts to a prohibited extension of a nonconforming use. There is no finding by the trial referee showing a distinction between problems caused by daily renters as opposed to weekly renters. The plaintiffs bore the burden of establishing that the defendants' activities amounted to an illegal extension of a nonconforming use. We cannot say that the trial court erred in concluding that the plaintiffs failed to meet this burden.

## VIII

The plaintiffs' final claim is that the trial court erred in failing to award damages. The trial referee concluded that "[a]lthough much of the annoyance, personal inconvenience and irritation suffered by the plaintiffs has

been caused during the use of the defendants' premises in the months of June, July and August . . ." during the remainder of the year, the plaintiffs were entitled to $8000 in damages.[21] The trial referee also concluded that "[t]here [was] no credible evidence from which a conclusion can be drawn as to any diminution in the value of the plaintiffs' premises as a result of the defendants' illegal actions in renting the Cozy Nest property" and that "[t]he use of the Cozy Nest property made by the defendants and their tenants [was] not unreasonable nor a nuisance."

The trial court sustained the defendants' objection to the award of damages and held that the plaintiffs were not entitled to the damage award. In response to the plaintiffs' request for articulation, the court, on May 30, 1986, filed an articulation of its earlier decision. In this articulation, the court stated that it had "sustained the defendants' objections to the report of the attorney trial referee as to [the award of damages], inasmuch as the referee's award of damages to the plaintiffs . . . was inconsistent with his [c]onclusion . . . that the 'use of the Cozy Nest property made by the defendants and their tenants is not unreasonable nor a nuisance'; and inasmuch as the facts found by the referee do not support the award of damages to the plaintiffs." The court noted that the trial referee found that the defendants' actions did not amount to a nuisance and that because there was no nuisance or unreasonable use by the defendants of their land,

---

[21] The trial referee concluded that the plaintiffs had been damaged as follows:

| | |
|---|---|
| Daniel E. Cummings | $2,500.00 |
| Beatrice E. Cummings | 5,000.00 |
| Richard H. Seel | 100.00 |
| Elizabeth Lamb | 100.00 |
| John A. Lamb | 100.00 |
| Louis Vezina | 100.00 |
| John W. Seidel | 100.00 |

there was no basis for the award of money damages to the plaintiffs. We agree with the trial court that, under the circumstances of this case and absent a finding of nuisance, the plaintiffs are not entitled to money damages.

There is no error on the appeal or on the cross appeal.

In this opinion the other justices concurred.