WILLIAM V. RAYMOND, JR., ET AL. *v.*
ROCK ACQUISITION LIMITED
PARTNERSHIP ET AL.
(AC 17322)

O'Connell, C. J., and Schaller and Dupont, Js.

Submitted on briefs June 2—officially released September 15, 1998

*Nancy Burton* filed a brief for the appellants (plaintiffs).

*Robert G. Skelton* filed a brief for the appellees (named defendant et al.).

*Hilary Fisher Nelson* and *Andrew S. Wildstein* filed a brief for the appellee (defendant Dyno New England, Inc.).

SCHALLER, J. In this nuisance action seeking monetary damages and injunctive relief, the plaintiffs appeal from the judgment rendered by the trial court upon granting the defendants' motion to dismiss. On appeal, the plaintiffs claim that the trial court improperly (1) dismissed the action for failure to exhaust administrative remedies, (2) dismissed the action where a motion to strike was appropriate, (3) dismissed the action against the defendant Dyno New England, Inc., and (4) denied the plaintiffs' motion for recusal. We reverse the judgment of the trial court.

The following facts are relevant to this appeal. The defendant Fairfield Resources Management, Inc. (Fairfield), is the operator of a sand and gravel mine that is located within a residential zone on Laurel Hill Road in the town of Brookfield. The mine is located on land owned by the defendant Rock Acquisition Limited Partnership (Rock). The defendant Dyno New England, Inc. (Dyno), supplies explosives to Fairfield and Rock for use at the site. The plaintiffs, William V. Raymond, Jr., Angela D. Raymond, Rose Klubko, Anne Grossenbacher, Louise Henion, Fred Krancher, Johanna Krancher and Lloyd Wilcox, own and occupy various residential properties that adjoin the sand and gravel mine.

On February 22, 1996, the town of Brookfield zoning commission issued a natural resources removal permit to Rock and Fairfield to allow for the operation of the mine. On March 15, 1996, the plaintiffs filed an administrative appeal in the Superior Court challenging the commission's issuance of the permit. This action was later dismissed by the trial court on mootness grounds because the one year permit had expired. After a renewal permit was issued, the plaintiffs filed a second administrative appeal to challenge the renewal of the

permit. The second administrative appeal is currently pending.

The plaintiffs commenced this action in the Superior Court on March 20, 1996, seeking to enjoin the defendants from the continued operation of the mine. The complaint was based solely on a nuisance theory, but sought both a temporary and a permanent injunction, money damages, attorney's fees and costs. The complaint alleged, inter alia, that the defendants' operation of the sand and gravel mine constitutes a private nuisance because the permit issued by the commission was issued illegally. The plaintiffs claimed that the operation of the mine has caused them to suffer, inter alia, excessive noise, air pollution, structural damage to and devaluation of their properties, and physical and emotional distress. The plaintiffs claimed damages for their injuries sustained both before and after the natural resources removal permit was issued by the commission.

On April 4, 1996, the defendants Rock and Fairfield filed a motion to dismiss this action, claiming that the trial court was without subject matter jurisdiction to hear the case because the plaintiffs failed to exhaust their administrative remedies and the action is barred by the prior pending action doctrine. In addition, Rock and Fairfield claimed that the plaintiffs admitted in their pleadings that they have an adequate remedy at law. On August 27, 1996, the trial court dismissed this action because the plaintiffs failed to exhaust their administrative remedies. This appeal followed.

I

The plaintiffs first claim that the trial court improperly dismissed the action for failure to exhaust administrative remedies. Specifically, the plaintiffs claim that the administrative remedy is inadequate because money damages are not available in an administrative appeal.

They also claim that their complaint in this action does not require an adjudication of the zoning issue that is in controversy in the administrative appeal because they are claiming damages for the defendants' activities that occurred before the natural resources removal permit was issued. Furthermore, the plaintiffs argue that the trial court improperly interpreted the relevant case law that controls exhaustion of administrative remedies in this situation. On the basis of our analysis of the controlling cases, we agree with the plaintiffs.

In its memorandum of decision, the trial court analyzed the relevant cases, *Cummings* v. *Tripp*, 204 Conn. 67, 527 A.2d 230 (1987), and *Cretaro* v. *Equitec Real Estate Investors Fund XII*, 6 Conn. App. 317, 505 A.2d 22 (1986), and concluded that *Cretaro* controlled the situation presented in this case. In so concluding, the trial court determined that in *Cretaro* the zoning authority had issued a permit, while in *Cummings* there was no action by the zoning authority that could be challenged in an administrative appeal.

In this case, because a permit was issued by the commission, the trial court concluded that *Cretaro* required the plaintiffs to exhaust their administrative remedies prior to bringing an action for damages and injunctive relief. The trial court based its decision on the *Cretaro* court's statement that "the common gist of [the plaintiffs'] claims is premised on the illegality of the action of the [commission]. We conclude, therefore, that the plaintiffs' taxpayers' action and nuisance counts come within the established rule that a party may not bring an independent action to test the very issues which the zoning appeal was designed to test." Id., 321.

While this may be an accurate statement of the law, it is not applicable here. We conclude that the trial court's reliance on the absence in *Cummings* of the

issuance of a permit by the zoning authority that could be challenged in an administrative appeal was misplaced. See also *Lewis* v. *Swan*, 49 Conn. App. 669, 716 A.2d 127 (1998). The *Cummings* court did not rest its holding on the lack of a permit issued by the zoning authority. Instead, the court relied on the existence of allegations of specific and material damages caused by zoning violations that qualified as an exception to the exhaustion doctrine. *Cummings* v. *Tripp*, supra, 204 Conn. 75–76. The *Cummings* court concluded that in such a situation, a direct appeal was permissible because the doctrine of exhaustion of administrative remedies did not apply. Additionally, we conclude that the fact that a permit has been issued that may later be challenged in an administrative proceeding is insignificant. To rest the applicability of the exhaustion doctrine on such a relatively insignificant factual distinction would elevate form over substance. We conclude, therefore, that the trial court's use of *Cretaro* as controlling in this case was improper. Accordingly, the trial court should have evaluated the defendants' motion to dismiss under the test set forth in *Cummings*.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); *State ex rel. Golembeske* v. *White*, 168 Conn. 278, 282, 362 A.2d 1354 (1975); see 3 Davis, Administrative Law § 20.01; General Statutes §§ 4-175, 4-183. *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 588, 424 A.2d 285 (1979). Despite this principle, in *Reynolds* [v. *Soffer*, 183 Conn. 67, 69,438 A.2d 1163 (1981)] we held that [a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief

restraining such violation [without exhausting administrative remedies]. *Blum* v. *Lisbon Leasing Corporation*, 173 Conn. 175, 180, 377 A.2d 280 [1977]; *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 482, 138 A. 483 [1927]; see also, 3 Rathkopf, The Law of Zoning and Planning (4th Ed.) c. 66. *Reynolds* v. *Soffer*, supra, 69, quoting *Karls* v. *Alexandra Realty Corporation*, 179 Conn. 390, 401, 426 A.2d 784 (1980); see *Brainard* v. *West Hartford*, 140 Conn. 631, 636, 103 A.2d 135 (1954). . . . In their complaint, the plaintiffs clearly allege that they will be specifically and materially damaged by a violation of the zoning ordinances which has occurred . . . on another's land. . . . See *Reynolds* v. *Soffer*, supra [69]. We note that the plaintiffs' assertion is more than a conclusory allegation of nuisance. See *Butzgy* v. *Glastonbury*, 203 Conn. 109, 523 A.2d 1258 (1987). In addition, the trial referee specifically concluded that the defendants' use of the property has caused, and if not enjoined will continue to cause, the plaintiffs irreparable damage and harm. The trial referee also concluded that the defendants' use of the property has caused the plaintiffs much annoyance, personal inconvenience and irritation. The court, therefore, was correct in concluding that the plaintiffs were not required to exhaust their administrative remedies before bringing this action in the trial court. The trial court had subject matter jurisdiction to hear this case. We cannot state too strongly, however, the necessity for clear and precise allegations of specific and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine." (Citation omitted; internal quotation marks omitted.) *Cummings* v. *Tripp*, supra, 204 Conn. 75–76.

In this case, the plaintiffs have made allegations of specific and material damages that they suffered as a result of the defendants' alleged zoning violations.

Specifically, the plaintiffs claim in their revised complaint dated June 14, 1996, that they "have all suffered and continue to suffer substantial damages to their persons and properties as a direct result of the said quarrying operations, in one or more of the following ways: (a) Excessive noise from drilling, blasting, rock crushing, rock processing, other machinery operations and trucking; (b) air pollution; (c) damage and threat of damage to domestic wells and quality of drinking water; (d) damage to structure; (e) fright, shock and anxiety associated with blasting and related activities; (f) devaluation of their properties; (g) loss of peaceful and quiet enjoyment of their properties; (h) physical and emotional distress; (i) loss of wetlands habitat and associated flora and fauna; (j) other damages resulting from the defendants' reckless conduct." We conclude that the plaintiffs have made sufficient allegations of specific and material damages suffered as a result of the defendants' activities and, consequently, have satisfied the requirements of *Cummings*, which create an exception to the exhaustion doctrine.

The policies on which the exhaustion doctrine rest have particular applicability to this case. The *Cummings* court noted: "As the United States Supreme Court has recognized, the '[a]pplication of the [exhaustion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved' and that the doctrine should not be 'applied blindly in every case.' *McKart* v. *United States*, 395 U.S. 185, 193, [201], 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969). It has also been said that '[e]xhaustion law is too complex for a meaningful simple statement of when exhaustion is required and when it is not, but clearly the courts generally do what they obviously should do— they weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable.' 4 K. Davis, Administrative Law (2d Ed. 1983) § 26.1.

"In *McKart* v. *United States*, supra, [395 U.S.] 193–94, the United States Supreme Court summarized some of the purposes of the exhaustion doctrine. Although some of these considerations are equally applicable to the facts of this case, we nevertheless recognize that certain very practical notions of judicial efficiency come into play as well. See id. At common law, property owners have the right to seek an injunction as well as damages for a nuisance affecting the enjoyment of their property. This right is supplementary to the right to seek injunctive relief from the zoning authorities for the violation of a zoning ordinance. See *Brainard* v. *West Hartford*, supra, [140 Conn.] 635–36. In deciding whether a nuisance exists, a court will often find it necessary to interpret the pertinent zoning regulations because the nuisance issue is intertwined with the lawfulness of the conduct involved. From a judicial viewpoint, it would be both inefficient and time consuming to require a litigant, as a prerequisite to judicial consideration of the nuisance claim, to exhaust his or her administrative remedies by first obtaining a ruling from the zoning board of appeals as to the lawfulness of the defendant's conduct. A fortiori, it would be inefficient and inequitable for a court, based on an ultimate finding of the absence of a nuisance, to dismiss the case for failure to exhaust administrative remedies when that court had already found that a zoning violation had been established and that that violation had caused the plaintiff special harm. We think it appropriate in such a situation for the court to give the relief, based on the zoning violation, which the plaintiff has requested." *Cummings* v. *Tripp*, supra, 204 Conn. 78–80.

The facts and procedural posture of this case justify application of the rule enunciated in *Cummings*. In addition, the sound policy considerations set forth in *Cummings* are applicable to this case. Here, the plaintiffs are seeking both injunctive relief and money damages for the defendants' operation of the mine. It is

clear that money damages are not an available remedy in an administrative action. See *Connecticut Water Co. v. Beausoleil*, 204 Conn. 38, 48–49, 526 A.2d 1329 (1987). The plaintiffs seek damages based on the operation of the mine both before and after the natural resources removal permit was issued. Thus, interpretation of the zoning regulations and the propriety of the permit issuance is not the sole determinative factor in assessing the plaintiffs' nuisance claim. Therefore, to require the plaintiffs to exhaust their administrative remedies in this case prior to seeking both injunctive relief and money damages would not serve the public policy of preserving judicial resources.

In summary, we conclude that *Cummings* rather than *Cretaro* applies to the facts of this case and, accordingly, hold that the plaintiffs are not required to exhaust their administrative remedies prior to proceeding in this action for injunctive relief and damages.

## II

The plaintiffs next claim that the trial court improperly dismissed the action because a motion to strike was the appropriate procedural mechanism. The plaintiffs also claim that the trial court improperly dismissed the action against Dyno because the motion to dismiss was filed by only Rock and Fairfield. Because we concluded in part I of this opinion that the trial court improperly dismissed the suit, we need not address either of those claims.

## III

The plaintiffs finally claim that the trial court improperly denied the plaintiffs' motion for recusal. Because the plaintiffs have failed to present any facts in support of this claim, including any reason why the trial court should have recused itself, we decline to review this claim due to inadequate briefing.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996)." (Internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

In their brief, the plaintiffs make a bare, conclusory assertion, without providing any factual support for their argument, that the trial court should have disqualified itself from hearing this case. They claim that the mere appearance of impropriety justifies recusal, yet fail to articulate the basis for the claimed appearance of impropriety. As a result, we are left to speculate as to why the trial court should have recused itself. We refuse to engage in such speculation. We conclude, therefore, that the plaintiffs' analysis of their recusal claim is inadequate and, accordingly, decline to review this claim.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.